**J. C. HUNTER et al., Plaintiffs,**

v.

**INTERNATIONAL SYSTEMS & CONTROLS CORPORATION, Defendant.**

Civ. A. No. 18160-3.

United States District Court,
W. D. Missouri, W. D.

Sept. 10, 1970.

Harry A. Morris, and Donald H. Loudon, of Morris, King, Stamper & Bold, Kansas City, Mo., for plaintiffs.

Allan L. Bioff, and James F. Duncan, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

ORDER OVERRULING DEFENDANT'S OBJECTIONS TO PLAINTIFFS' REQUEST FOR PRODUCTION, GRANTING PLAINTIFFS' MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES, GRANTING PLAINTIFFS DISCOVERY OF DEFENDANT'S ANSWERS TO INTERROGATORIES 4, 26 and 27, DENYING DEFENDANT'S MOTION TO AMEND ANSWER AND RESERVING QUESTION OF WHETHER SANCTIONS SHOULD BE IMPOSED

BECKER, Chief Judge.

This is an action under the diversity statute, Section 1332, Title 28, United States Code, in which plaintiffs have sued defendant for the alleged breach of contract for the sale of the Hunter-Wagner Co., Inc., and upon related employment contracts. The complaint is in four counts. In Count I, plaintiffs allege that defendant has failed and refused, though requested, to pay the final installment of $26,896.08 on the agreed purchase price of $190,000.00; and that defendant also owes plaintiffs some $286,500.00 under the contract for sales produced above the minimum amounts in 1966, 1967, 1968 and 1969. Plaintiffs therefore demand $313,396.08 in damages on Count I. In Count II, plaintiffs allege that a greater number of additional sales, except for defendant's "acts of diverting, withholding or deferring sales, business or prospects from Plaintiffs' personal credit," would have been made by them; and that this reduced plaintiffs' ability to perform under the sales contract and reduced their sales record in negotiating under the employment contracts. They therefore request $300,000.00 punitive damages and the maximum contemplated additional amounts under the sales contract of $50,000.00. In Count III, plaintiffs allege that their employment was terminated without cause; that defendant informed them that defendant was selling a subsidiary through which sale of plaintiffs' products had been contemplated, leaving plaintiffs to believe that defendant would be unable to perform the employment contracts. Plaintiffs therefore demand ten months' salary or $16,666.67 each. In Count IV, plaintiffs request that a declaratory judgment be rendered declaring the contractual provisions purporting to prohibit plaintiffs from furnishing personal services in competition with defendant to be null and void; and that defendant be enjoined from enforcing those provisions.

Plaintiffs have now filed on August 17, 1970, their "motion to compel discovery" of the documents which had been requested of defendant by their prior request for production. Also, their motion of August 6, 1970, to compel answers to interrogatories still pends. And defendant has moved for leave to amend its answer and has filed its answers to plaintiffs' interrogatories 4, 26 and 27, in compliance with the prior order of the Court, *in camera* and under seal.

Defendant objects to paragraph No. 6 of plaintiffs' motion for production, which calls for:

"All written memoranda, notes or other records concerning the possibility of a sale of the Kansas City plant of Black, Sivalls & Bryson, Inc. in files of defendant or its wholly-owned subsidiary, Black, Sivalls & Bryson, Inc. regarding discussions with other persons beside Local 1962 of the United Steelworkers of America."

Defendant asserts that "[t]hese documents contain a large amount of confidential information having to do with past and current negotiations between Black, Sivalls & Bryson, Inc. and potential buyers of the Kansas City plant of Black, Sivalls & Bryson, Inc.," the disclosure of which "would be highly prejudicial to the efforts to sell the property"; that "[t]he documents are not relevant and would not lead to the discovery of anything relevant in the contract in dispute"; that "[t]he request is unlimited as to time" while "[p]laintiffs' rights to additional consideration under the contract in issue terminated December 31, 1969"; that "Black, Sivalls & Bryson, Inc. had the capacity to produce bolted steel tanks throughout the period ending December 31, 1969, and, in fact, still has the capacity and is still producing and selling bolted steel tanks"; that "[p]laintiffs' rights under the contract were not frustrated by any sale of the plant producing bolted steel tanks"; and that plaintiffs are currently employed by a competitor of "defendant's subsidiary, Black, Sivalls & Bryson, Inc." and therefore "the confidential business records called for in paragraph No. 6 should not have to be produced except on the clearest showing of relevancy and materiality to the issues under the contract in suit."

It is readily apparent from the pleadings herein, however, that the information sought is within the scope of discovery. The time factor is reasonably limited by the nature of the docu-ments. One of the allegations of plaintiffs' complaint is that they were informed by defendant of the intended sale of Black, Sivalls and Bryson, Inc., through which the sale of plaintiffs' products had been contemplated. Whether the negotiations evidenced by the documents antedate or postdate December 31, 1969, the sought documents may lead to the discovery of evidence which would be admissible on the issue of the intention with which sales were diverted or withheld, inasmuch as punitive damages are demanded. It must therefore be concluded that the sought documents are discoverable. Defendant, however, without being specific, asserts that the documents contain confidential information, the production of which would be particularly prejudicial because plaintiffs are currently employed by a competitor of defendant's subsidiary. Under the provisions of Rule 26(c) (7), F.R.Civ.P., "[u]pon motion by a party or by the person for whom discovery is sought, *and for good cause shown*, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including * * * (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." (Emphasis added.) But defendant has not shown good cause for the issuance of such a protective order by specifying the nature of the confidential documents or otherwise specifying precisely how the disclosure of the information could prejudice defendant in its attempts to sell its subsidiary. The request for production will therefore be granted. Defendant may produce the documents under seal for the *in camera* inspection of the Court within 5 days of this order if it so desires, together with specific statements respecting each item of allegedly confidential information, showing the prejudice which

could result to defendant from its discovery. Defendant has further stated as follows:

"Plaintiffs have taken the deposition of Gordon Bing who is a vice president of defendant and a vice president of Black, Sivalls & Bryson, Inc. * * * Witness Bing testified that in connection with his efforts to sell the Kansas City operations of Black, Sivalls & Bryson, Inc. there had been prepared a pro forma financial statement for the fourth quarter of 1969 and a projection for the year 1970 on the bolted tank product line. Defendant is willing to make these financial statements available for inspection by counsel for plaintiffs upon the same terms and conditions which the parties have agreed will apply to the inspection of other financial statements covered by paragraph 11 of the request for production of documents."

The deposition of Mr. Bing shows that the above documents were made in connection with the negotiations to sell Black, Sivalls & Bryson, Inc.; and that the documents are otherwise relevant in that they relate to an expected profit margin (on the sale of bolted steel tanks). The conditions under which the production of the documents called for in paragraph 11 of plaintiffs' request were made are not known to the Court. Therefore, unless the documents have been produced under an agreement of the parties, they should be produced within 5 days of the date of entry of this order.

▇ Defendant next objects to producing the documents requested by plaintiffs in paragraph 11 of their request, which asks for the "Financial statements of Black, Sivalls & Bryson, Inc. for each of the years 1965 through 1969." According to defendant's suggestions filed on August 21, 1970, these documents have already been produced under a special agreement of the parties. If they have not been produced, they should be produced within 5 days of the date of this order. Defendant's objection of confidentiality is without merit in view of this Court's prior determination that the financial affairs of defendant for the time period in question are generally discoverable. Alternatively, however, the defendant may file the documents under seal for the *in camera* inspection of the Court, in separate categories in separate packages or envelopes on which the claim of immunity from discovery is stated with supporting factual details with respect to each category of documents.

▇ Defendant next objects to paragraphs 20 and 21 of the request for production because they "contain no reference to plaintiffs, or any transaction involving plaintiffs." The requests are for the "corporate minute book of defendant commencing with record of any meeting held from December of 1965 to present" and the "Memorandum of May 25, 1970, from H. J. Long to P. E. Martinez relating to operations of Hunter-Wagner, Inc." The relevance of the latter request to the contract herein litigated, however, is obvious. Further, the corporate minute book of Black, Sivalls & Bryson, Inc. may contain relevant information regarding the projected sales of plaintiffs' products through that corporation or to the contemplated sale of that corporation by defendant. These requests should therefore be granted and the objections thereto overruled, provided that no record of corporate minutes need be produced which does not relate to any issue in this case including but not limited to the issue of liability or damages.

▇ Plaintiffs also move for further answers to their interrogatories numbered 28, 30, 31, 37, 49, 51 and 53. Interrogatory No. 28 inquires as follows:

"State each and every customer of Black, Sivalls & Bryson, Inc. which purchased bolted steel tanks and the total dollar volume of such purchases

and the adjusted gross profit (as that term is used in Exhibit 'A' to the complaint herein) thereon for any other customers in the years 1966, 1967, 1968 or 1969 not specifically called for by Interrogatories Nos. 21 through 24 or No. 13 herein."

Defendant's answer is as follows:

"Sales of bolted steel tanks by Black, Sivalls & Bryson, Inc. were not tabulated on an individual customer basis during the years 1966–1969. The total dollar volume of sales of bolted steel tanks to all customers, as recorded in the general ledger, was

| Years | Amounts |
|---|---|
| 1966 | $1,445,599.82 |
| 1967 | $1,357,670.59 |
| 1968 | $3,144,384.61 |
| 1969 | $2,923,163.02." |

Defendant cites cases and contends that it is not required under the circumstances to make extensive tabulations in order to answer the interrogatories. But plaintiffs have stated, in support of their motion to compel discovery, that "[d]efendant attempts to evade the question by stating sales were not tabulated on an individual customer basis but ignores the request to identify various customers not otherwise known to plaintiffs." The interrogatory should therefore be construed to request a list of customers other than those whose names were supplied in prior interrogatories. The motion to compel an answer to this interrogatory so construed should therefore be granted. The relevance of the projected and made sales of bolted steel tanks to the claim for additional compensation is clear.

Interrogatory No. 30 requests the total dollar volume of bolted steel tanks sold outside of the United States by Black, Sivalls & Bryson, Inc. for various years and the amount of adjusted gross profit received on such sales. Because the interrogatory was phrased to ask for "sales of bolted steel tanks made outside of the United States by Black, Sivalls & Bryson, Inc.," defendant has deliberately misconstrued the interrogatory and has answered as follows:

"None, because there were no bolted steel tanks made outside of the United States by Black, Sivalls & Bryson, Inc. during the years 1966–1969."

But the intent of the interrogatory is obviously to ask for sales made outside the United States, especially in view of interrogatory No. 31, which reads as follows:

"For any of the years in which sales were made outside of the United States by Black, Sivalls & Bryson, Inc. as shown by response to Interrogatory No. 30 herein, state the name of each customer buying such tanks and specify the date and dollar amount of each such sum."

An answer should therefore be required of defendant respecting its foreign sales of the bolted steel tanks. Defendant objects that "under the contract in suit, it is immaterial whether the sales were made to foreign or domestic customers." But plaintiffs are entitled to the information in order to have a complete picture of sales of products which were contemplated under the allegedly breached contract. For the same reasons, defendant should be required to give a specific, detailed answer to interrogatory No. 31. Defendant's deliberate misconstruction of interrogatory No. 30, especially in view of the order entered herein on July 23, 1970, ordering defendant to answer within 5 days, constitutes a failure to make discovery without substantial justification and will later be considered, among other things, as a basis for possible sanctions under Rule 37(b) (2), F.R.Civ.P., as discussed below.

Interrogatory No. 37 inquires as follows:

"State if defendant arranged for and made the acquisition of any corporation or the assets thereof other than

Hunter-Wagner Co., Inc. during the years 1965, 1966, 1967, 1968, 1969 and 1970 where the final compensation to be paid by defendant under the agreement or agreements concerning any such acquisition was dependent upon future performance of personnel or future earnings of the acquired corporation after the date of acquisition and, if so, state full details and describe the basis of any such additional compensation."

The answer is as follows:

"Note 5 to the consolidated financial statements of defendant, appearing at page 45 of defendant's 1969 annual report (copy of which has been previously supplied by defendant to plaintiffs), states certain arrangements whereby the final consideration to be paid in connection with the acquisition by defendant of certain subsidiary companies is dependent upon the future earnings of the acquired subsidiaries. In addition, defendant has authorized Series J and K cumulative preferred stock in connection with the acquisition of Owens Manufacturing, Inc. and the Series K is reserved for future issue based on earnings of Owens Manufacturing, Inc."

Plaintiffs contend that the "answer submitted is evasive and merely refers to various financial statements for the year 1969 without making a detailed response." Defendant states that in answering the interrogatory, the note referred to read as follows:

"Shares reserved for future issue are 38,500 Series D shares based on earnings of the Pemar Companies, subsidiaries of the Company, through 1973, and 18,181 Series H and 2,425 Series I shares based on earnings of Reed-Joseph during the period from January 1, 1970 to November 30, 1974. Shares issued and held in escrow for future release are 20,650 Series E shares and 22,740 Series F shares based on earnings of Thomas during each of the

five years ending December 31, 1973 and 72,500 shares of Series I based on earnings of Reed-Joseph from January 1, 1970, to November 30, 1974. All or a portion of shares held in escrow will be returned to the Company if earnings for the periods indicated are less than certain specified amounts. Based on the earnings of Thomas for the year ending December 31, 1969, 2,146 Series E shares will be released from escrow in 1970."

But details respecting the future issue based on the future earnings of Owens Manufacturing, Inc., including the amount of future earnings and such "certain specified amounts" and other required amounts of earnings are not given in respect of the other companies above. Further, the information which may be relevant to this action regarding the descriptions of the respective series and the dates of the future issue for Owens are not included. The motion to compel further direct answer to this interrogatory should be granted, provided that if the details are reduced to agreements in writing and accounts in documents, the detail may be provided in the form of copies of documents attached on originals simultaneously produced for inspection.

Interrogatory 49 reads as follows:

"State if any notice was given to any labor organization by defendant concerning sale or closing of the manufacturing plant of Black, Sivalls & Bryson, Inc. located in Kansas City, Missouri, prior to January 1, 1970, and, if so, state full details, including the contents of any document, letter or paper giving such notice."

Defendant contends that its answer to interrogatory No. 48 is satisfactory as an answer to this interrogatory, also. It reads:

"In July 1969 officials of Local 1962, United Steelworkers of America were advised by Black, Sivalls & Bryson, Inc. that there was a possibility of the

sale of all or any part of the Kansas City plant operations and full discussions were had at that time with the union representatives regarding the matter. In September, 1969, the union officials were advised, both verbally and in writing, by Black, Sivalls & Bryson, Inc. that thoughts of selling the entire Kansas City plant operation had been 'shelved'. In December, 1969, the union officials were advised by Black, Sivalls & Bryson, Inc., both verbally and in writing, that the possibility of selling the Kansas City operation was again under active consideration and full discussions were had with union officials at that time regarding the matter. Subsequently, the union was informed from time to time, both verbally and in writing, regarding the status of efforts to find a possible buyer."

But the answer does not state the contents of the notices sent to the Union, nor does it advise of their character as actual, formal notices. Further, information concerning the contents of the notices "regarding the status of efforts to find a possible buyer" are not included. Defendant states that these details will be provided by its compliance with paragraph 5 of plaintiffs' motion for production, which calls for all written communications between defendant and local 1962 of the United Steel Workers of America. Unless that production of documents has meantime supplied the requested information, the defendant should more fully answer this interrogatory, as specified above.

Interrogatory No. 51 reads as follows:

"State if defendant or any agent thereof has made any offer to sell or negotiated for the sale of the manufacturing plant of Black, Sivalls & Bryson, Inc. located in Kansas City, Missouri, since January 1, 1970, and, if so, state full details, including identification of any prospective buyer."

Defendant's answer is:

"Discussions have been held between certain representatives of Black, Sivalls & Bryson, Inc. who are also officials of ISC and possible buyers of the Black, Sivalls & Bryson, Inc. Kansas City plant operations. If at some time it is determined by the court that the identity of such possible buyers is relevant to the issues herein, the identity of such possible buyers will be disclosed to the court in camera."

It is clear, however, that subjects relevant to the subject matter of this action might have been discussed in the negotiations, including the projected sales of plaintiffs' products, and, further, as stated above, the fact that the negotiations for sale took place could constitute an issue. The prospective buyers would have possible knowledge of the discussions of these relevant subjects. The defendant has no right, unilaterally, without a protective order, to decree that there may be a production in the future *in camera*. Therefore, the additional answer should be compelled without delay or conditions.

Interrogatory No. 53 inquires as follows:

"State if Black, Sivalls & Bryson, Inc. has ordered or caused the closing or partial closing of its manufacturing plant located in Kansas City, Missouri, since January 1, 1970, and, if so, state full details of any such action."

The answer is as follows:

"Black, Sivalls & Bryson, Inc. is in the process of closing the agricultural product line at its Kansas City plant."

Plaintiffs contend that the answer fails to respond to the portion of the interrogatory calling for "full details of any action revealed in response to the first portion of the interrogatory." Defendant contends that there are no relevant "other details." It appears that at least the projected closing date and the products included in the agricultural line

until the close of the discovery period, thus denying plaintiffs their right to have full discovery on these issues. Therefore, the motion to amend will be denied.

In respect of the possible imposition of sanctions in this case, it is noted that:

(1) Defendant failed timely to answer or respond to plaintiffs' interrogatories or requests for admissions. In the order of this Court filed on July 23, 1970, it was noted that:

"The records herein show that the interrogatories were filed on June 2, 1970, and the requests for admissions on June 3, 1970. It therefore appears that answers are out of time under the provisions of Rule 33, F.R.Civ.P., and that plaintiffs are partially to blame for this situation in that they have taken no steps to compel answers or responses, either by motion in this Court, or otherwise on the record.

"On July 21, 1970, counsel for defendant telephoned the Court to state that he consented to the motion for extension of discovery. In a case where defendant has delayed in answering interrogatories and in responding to requests for admissions past the time allowable under the Rules of Civil Procedure, such consent does not offer the Court justifiable grounds on which to grant the extension.

"In the interests of justice and in the desire of reaching the merits of this action, however, a briefer extension than sought will be granted."

In the same order, it was ordered that the answers to interrogatories and responses to requests for admissions be filed within 5 days. Attempts to extend time for dis-covery without leave of court are forbidden by the orders in this case and by local practice.

(2) As noted above, the interrogatory answers, in main part, were not served until August 3, 1970. The answers to interrogatories 4, 26 and 27 were not filed until August 18, 1970, and the answers to 26 and 27 were insufficient and unresponsive. Complete responses to requests for admissions were not served or filed until August 21, 1970. Answers to interrogatories 21, 22, 23 and 24 have yet to be filed. And defendants unjustifiably and unreasonably misconstrued interrogatories 30 and 31 in order to avoid fully answering them.

(3) Defendant's repeated obstruction of discovery and violation of orders of this Court necessitated a request for further extension of discovery, which was filed on August 21, 1970. This request was made in spite of the order of July 23, 1970, that "[b]oth parties * * * are forewarned that no further extensions will be granted in the absence of extraordinary circumstances." In the resulting order of August 21, 1970, designating this case as a complex case and ordering the parties to supply a proposed order further extending discovery, it was noted that "[c]ounsel in this case have repeatedly requested extensions of time for the completion of discovery and have not been able to prepare this case under Standard Pretrial Order No. 1."

(4) Defendant did not timely assert its defenses of estoppel and accord and satisfaction in a possible attempt to delay or deny discovery on these issues.

The above enumerated facts, as well as the failure fully to answer interrogatories 28, 37, 49, 51 and 53, will be con-

to the complaint herein) is not a term which has any application to the contract with the Government of Guyana and such an adjusted gross profit has not been calculated with respect thereto."

Interrogatory No. 27 inquires as follows:

"State the dollar volume of the final design engineering contract entered into by defendant or any subsidiary thereof with the Government of Guyana pertaining to rice, storage, drying, milling and processing installations and give full details as to the date of such contract, name of actual contracting corporation and dollar amounts received on said contract in any of the years 1968, 1969 or 1970 and the adjusted gross profit received to date in any such years from said contract."

The answer to interrogatory No. 27 is as follows:

"Rhodes Corporation and the Government of Guyana entered into a contract dated May 15, 1968 for the final design engineering of certain rice facilities. Rhodes Corporation's total billings pursuant to this contract were $251,548.14. The receipts pursuant to this contract were $146,733.47 in 1968 and $97,248.23 in 1969. Under said contract Rhodes Corporation received a fixed fee of $14,605. Adjusted gross profit (as that term is used in Exhibit 'A' to the complaint herein) is not a term which has any application to the contract with the Government of Guyana and such an adjusted gross profit has not been calculated with respect thereto."

Only defendant, however, knows all of the figures by which the adjusted gross profit must be calculated under the contract herein sued upon and in respect of the contract inquired into by the above interrogatory. It does not appear, and defendant has not stated, that it would be overly burdensome for defendant to calculate what it contends the adjusted gross profits to be. Neither the gross profit nor the name of the "actual contracting corporation" has been supplied. Therefore, the Court will consider the unjustified failure to attempt to make a responsive answer to this interrogatory on the issue of whether to impose sanctions, which will be considered later. Meantime, the information given in these answers, for the reasons stated in connection with interrogatory No. 4, will be made available to plaintiffs.

■ Finally, defendant belatedly moves to amend its answer to the complaint herein to state as follows:

## "COUNTS I and II

24. With regard to the claims for additional consideration for the years 1966, 1967 and 1968, defendant alleges that plaintiffs accepted payments from defendant, made pursuant to the parties' contract, for the years 1966, 1967 and 1968, and plaintiffs thereby waived and are estopped to claim any additional consideration for these years. Alternatively, defendant alleges an accord and satisfaction between the parties of the amounts payable to plaintiffs for the years 1966, 1967 and 1968."

With respect to the proposed amendment, however, plaintiffs cogently state that the factual bases of these defenses must have been known to defendant at the time of the filing of the original answer "since defendant's own acts were involved." Defendant does not deny this, but insists that counsel, at that stage, was "not fully apprised of all the facts" and that counsel was not convinced that these defenses were applicable until the time for completion of discovery had nearly elapsed. Under the circumstances thus shown, the belated attempt to assert these defenses appears to be an unjustified attempt by defendant to obstruct and delay the discovery schedule by failing to apprise its counsel of the facts underlying these defenses

should be additionally stated. A supplemental answer will therefore be ordered.

In connection with the answers to interrogatories, plaintiffs state that they were not served with the answers until August 3, 1970, in spite of the fact that the answers bound to be served and filed on or before July 28, 1970, under the Court's order of July 23, 1970, directing that answers be filed within 5 days. Defendant states that an "unexecuted" copy of the answers was mailed to plaintiffs on July 24, 1970, through mistake. It admits, however, that an "executed" copy of the answers was not served until August 3, 1970. Plaintiffs also note that, in filing the answers, the defendant undertook unilaterally to further extend the time for answering interrogatories numbered 21, 22, 23, 24, 26 and 27 by stating that answers to these interrogatories would be filed in camera. On August 18, 1970, the answers to interrogatories 4, 26 and 27 were filed (far out of time) under seal for *in camera* inspection. The other answers have not yet been filed. This constitutes a further failure to make discovery which may be a subject for the imposition of sanctions under Rule 37, F.R.Civ.P. This will be discussed below.

Further, the answers to interrogatories 26 and 27 do not appear to be entirely sufficient. Interrogatory No. 4 inquired as follows:

"Identify each and every corporation in which defendant owned a minority interest of the outstanding capital stock at any time from and including 1965 to present stating full particulars, including, name of the corporation; its state of incorporation; address of the corporation's principal place of business; and the dates on which such ownership interest was acquired and, if applicable, disposed."

The answer supplied is:

"Commencing in July, 1966, and ending in October, 1967, defendant owned a minority interest of the outstanding capital stock of Holly Sugar Corporation. Holly Sugar Corporation is incorporated under the laws of the State of New York and its principal place of business is located at Colorado Springs, Colorado."

It is readily apparent, as stated in the order of July 2, 1970, that the information may lead to evidence admissible on the issue of the financial status of the defendant for the years in question and on the adjusted gross profits for the same years, on which recovery of damages on the contract herein litigated may be based. Therefore, this information will be made available to plaintiffs, subject to the provision of the contract still in force during the pendency of this action that this information will not be disclosed to anyone by plaintiffs.

The same disposition will be made of the information given in the answers to interrogatories Nos. 26 and 27. It is to be noted, however, as stated above, that the answers are insufficient in that they do not include the adjusted gross profit. Interrogatory No. 26 reads as follows:

"State the total dollar volume of the 1967 contract with the Government of Guyana for a feasibility and engineering study of rice storage, drying, milling and processing installations by Rhodes Corporation and state the amount of adjusted gross profit received on such contract by Rhodes Corporation, if any."

The answer reads as follows:

"Rhodes Corporation was a member of the joint venture which entered into in 1967 a feasibility and engineering study contract with the Government of Guyana and, pursuant to that contract, Rhodes Corporation's share of the total billings was $221,114.90. This was a fixed fee contract and Rhodes received two-thirds of the fixed fee. The amount of the fixed fee was $15,464. Adjusted gross profit (as that term is used in Exhibit 'A'

sidered on the issue of whether to impose sanctions when the pretrial conference in this cause is held at 2 P.M. on September 14, 1970.

For the foregoing reasons, it is

Ordered that defendant's objections to plaintiffs' request for production be, and they are hereby, overruled and defendant is ordered to produce the requested documents within 5 days at plaintiffs' counsel's office, or, alternatively, under seal in this Court as directed above. It is further

Ordered that defendant make further and complete answers to interrogatories 28, 30, 31, 37, 49, 51 and 53 as indicated above within 7 days of the date of entry of this order. It is further

Ordered that plaintiffs be, and they are hereby, granted discovery of defendant's answers to interrogatories 4, 26 and 27, and defendant will serve counsel for plaintiffs with a copy of its answers within 7 days from the date of entry of this order. It is further

Ordered that defendant's motion to amend its answer be, and it is hereby, denied. It is further

Ordered that the issue of imposition of sanctions on defendant be considered at the pretrial conference which will be held herein at 2 P.M., September 14, 1970.