**RELIANCE INSURANCE COMPANY,**
**Plaintiff,**

v.

**BARRON'S sued in the name of Dow Jones & Company, Inc., et al.,**
**Defendants.**

**No. 76 Civ. 4094–CLB.**

United States District Court,
S. D. New York.

March 16, 1977.

Willkie, Farr & Gallagher by Robert E. Bartkus, Michael B. Targoff, New York City, for plaintiff.

Patterson, Belknap & Webb, New York City, for Dow Jones by Robert D. Sack, W. Peter Burns, New York City.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Abraham Briloff by Paul Martinson, A. Brian Savin, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

This discovery dispute presents unusual circumstances. Plaintiff Reliance Insurance Company ("Reliance"), as its name implies, is engaged directly and through its subsidiaries, in underwriting casualty, property and life insurance in many states and abroad. Most of its common stock (96.9%) is owned by Reliance Financial Services Corporation, the common stock of which in turn is wholly owned by Reliance Group Incorporated, a corporation whose securities are publicly traded.

The corporate defendant (hereinafter "Barron's") is the proprietor of a well known financial magazine published weekly in New York City. The individual defendant, Dr. Abraham J. Briloff ("Briloff")

holds the Emanuel Saxe Chair of Distinguished Professor of Accountancy at Baruch College of the City University of New York. In addition to teaching and lecturing in the field of accounting, Briloff has also published widely on this subject, writing articles on financial and accounting matters directed to nontechnical readers, including members of the investing public. He may be regarded, for our purposes, as a journalist or reporter.

By its complaint filed September 11, 1976, plaintiff seeks damages and punitive damages ($27,000,000.00), pleading eight separately stated claims against either or all defendants.

Viewed most favorably to plaintiff, the complaint alleges that Briloff wrote, and Barron's published, in its July 19, 1976 issue, the article attached to the complaint entitled "Whose 'Deep Pocket'? At Reliance Group, The Slogan is 'Dig We Must'." The article was published at a time when plaintiff had filed a preliminary registration statement for sale to the public of two million shares of a proposed new Series A cumulative preferred stock issue.

In the article, defendants purported to expose certain "creative accounting" concepts being employed by Reliance, and charged improprieties, as well as bad business judgment and breach of fiduciary duty, leading to the decision to market the proposed Series A issue. Placed under this spotlight the desirability of the proposed issue declined, causing Reliance to increase the dividend yield to the extent of $7.5 million over the life of this stock issue in order to make it marketable.

Reliance charges, in its complaint, that Briloff and Barron's violated § 10(b) of the Securities Exchange Act of 1934, as well as Rule 10b–5 promulgated thereunder, and the laws of the State of New York relating to libel and defamation, negligence and intentional tort.

In its answer, Dow Jones, publisher of Barron's, denied plaintiff's allegations and pleaded six affirmative defenses, as well as two partial defenses. These defenses in-

cluded truth, fair comment and First Amendment rights. Briloff's answer is to the same effect, pleading eleven affirmative defenses and two partial affirmative defenses.

Subject matter jurisdiction is premised on § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and diversity of citizenship.

To complete their pre-trial discovery, defendants have demanded production of a substantial number of plaintiff's internal corporate documents and records. These undoubtedly will bear on the intent and the good faith of plaintiff's management in offering the proposed stock issue, or may lead to relevant evidence in support of defendants' claims of truth and fair comment.

At a pre-trial conference held on February 1, 1977, plaintiff's counsel expressed willingness to disclose the materials requested by defendants, but asked for the customary pre-trial stipulation and order of confidentiality, limiting pre-trial use of such material to matters pertaining to this action. Plaintiff specifically requested that no other uses be made of non-public information obtained pursuant to these discovery proceedings. Several days later, defendants declined to so stipulate.

■ Plaintiff's desire for secrecy will never, of course, be completely satisfied. The trial of this case will be public, although only relevant evidence will be admissible. The difficulty lies in the nature of pre-trial discovery which requires the disclosure of material which may be neither relevant nor admissible at trial, since it may lead to the discovery of relevant evidence. See Rule 26(b), F.R.Civ.P.

Since the parties were unable, although requested by the Court, to stipulate to an order of confidentiality, plaintiff sought a protective order pursuant to Rule 26(c)(7), F.R.Civ.P. which would limit the use by defendants' attorneys of "(a)ll non-public information and documents ascertained and produced by plaintiff pursuant to discovery, including deposition testimony, answers to interrogatories, and documents produced . . . ." The order sought would forbid defendants' attorneys from disclosing "to any person other than such attorneys" the information and documents so described, but would allow disclosure of "financial information to parties, representatives of the parties and experts as necessary for purposes of this action. . . ." Finally, the requested order would prohibit "defendants and their employees and agents" from using any such information and documents "in any publication, address, lecture or other medium of public dissemination, except as such information is a matter of public record or is otherwise known to the defendants and their employees and agents." Thus, plaintiff is not objecting, at this time, to the scope of defendants' discovery; it is merely asking that the fruits of that discovery remain confidential.

Rule 26(c)(7), F.R.Civ.P. provides, in part, that "for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (7) that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way."

■ It is well established that the party seeking the order of confidentiality bears the burden of demonstrating the required "good cause" supporting the issuance of such an order. *Davis v. Romney*, 55 F.R.D. 337 (E.D.Pa.1972); *Hunter v. International Systems & Controls Corp.*, 51 F.R.D. 251 (D.C.1970); *Essex Wire Corp. v. Eastern Sales Co., Inc.*, 48 F.R.D. 308 (E.D.Pa.1969); and *Apco-Oil Corp. v. Certified Transportation Co.*, 46 F.R.D. 428 (W.D.Mo.1969).

In *United States v. IBM*, 67 F.R.D. 40, 46 (S.D.N.Y.1975), Chief Judge Edelstein of this District set forth the test by which to determine if commercial information warranted the protection of an order of confidentiality:

"(T)he court adopts the position that where commercial information may be subject to protection under Fed.R.Civ.P. 26(c) it will look to determine if its disclo-

sure will work a clearly defined and very serious injury."

The court went on to declare that it would be guided, in its decision, by those considerations used when determining whether certain information should be classified as trade secrets. These considerations include, *inter alia* : (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

Plaintiff's attempt to sustain its burden of proof consists, in large part, of two attorneys' affidavits. Although it has been held that the hearsay allegations of an attorney's affidavit are insufficient to warrant issuance of a protective order, *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y.1973), the Court has considered the allegations set forth in these affidavits, recognizing that, given time, plaintiff could produce non-hearsay affidavits to the same effect. In the first affidavit, received prior to the oral argument, counsel states that public dissemination of the confidential non-public information "might be harmful to plaintiff and to the investment community." For example, it is argued that incomplete or misleading information, such as internal memoranda, might result in an artificial impact on the market in plaintiff's securities. How the disclosure of truth can ever harm the "investment community" is not clear, but we will assume that such disclosure might harm plaintiff.

The second attorney's affidavit, received after the submission date of this motion, described the types of documents which allegedly require confidential treatment. These include: (a) correspondence with government regulatory agencies; (b) "cash flow forecasts" of plaintiff for the period 1969–1978; and (c) "cash budgets" of plaintiff for the years 1975–1977, with projec-

tions through 1979. These last two categories consist of internal management projections of the plaintiff's financials for the present and future.

In further support of its motion, plaintiff submitted an affidavit from one of its vice-presidents, Mr. Robert H. Barrett, which states that the categories of documents described by the attorney's affidavit are indeed treated as confidential by the company. Specifically, access to such documents is said to be limited to the company's "employees, officers and directors," but is barred to "the public generally, to policyholders or to agents." No further indicia of "confidentiality" or of "serious injury" are set forth either in plaintiff's papers or in its oral argument. Plaintiff conceded, in the course of argument, that this case does not involve the preservation of the confidentiality of "trade secrets," as that term is presently used.[1]

Plaintiff suggests that if defendants did not have the claimed animus against plaintiff in July, when the offending article was published, they probably have it now, having been hauled into court to justify their previous article. Much of the information sought in pre-trial discovery, while necessary to prepare for trial, may also furnish grist for the journalistic mill. Plaintiff contends that receipt of this information will likely inspire Briloff to write another article derogatory of plaintiff's management, or perhaps even defamatory, holding Reliance up to opprobrium, and damaging its relations with customers, investors and creditors.

In response to plaintiff's demand for confidentiality and limited access, defendants raise several countervailing arguments worthy of serious consideration.

*Failure of Plaintiff to Meet its Burden of Proof*

As noted above, the plaintiff, as the moving party, is required to demonstrate good

[1]. For an accurate definition of the term "trade secret" see *United States v. IBM, supra*, p. 46, note 9.

cause for the issuance of an order of confidentiality. To sustain its burden, plaintiff must show, specifically, that it "will indeed be harmed by disclosure." *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 409 (N.D.N.Y.1973). *United States v. IBM, supra*, demonstrates how difficult it is to sustain this burden. Here, plaintiff has made an insufficient showing both as to the confidentiality of the documents for which protection is sought, and as to the expected harm which would result from their release, thereby failing to sustain the burden of proof required in order to secure a protective order.

If, however, this were the only argument against the order which plaintiff seeks, the Court would allow the contested documents to be submitted under seal for the *in camera* inspection of the Court, together with a statement as to the harm which each item might cause. See *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y.1973); *Hunter v. International Systems & Controls Corp., supra*. But it is not.

### The First Amendment Issue

Defendants contend correctly that if this Court grants the protective order sought by plaintiff, it would, in effect, be ordering a "prior restraint" of the freedom of the press, thereby violating their First Amendment rights. Defendants further argue that the restraint on the lawyers and parties would deny their right to the exercise of free speech, and be unenforceable.

In *International Products Corp. v. Koons*, 325 F.2d 403, 407 (2d Cir. 1963), a case decided before *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), Judge Friendly held in a case not involving journalists, that a prior restraint on information obtained by the processes of the court was permissible in the discretion of the Court, and constitutional. *Rodgers v. United States Steel Corp.*, 536 F.2d 1001, 1006 (3d Cir. 1976) holds to the same effect, *in dicta*. In *Rodgers*, the court reasoned that by taking part in the discovery process, the parties and counsel impliedly waive their First Amendment rights freely to disclose the information so obtained.

■ Nonetheless, the defendants urge, and I believe correctly, that the order requested by plaintiff herein *would* constitute a prior restraint on defendants' First Amendment rights. Such a prior restraint may be constitutional, under *International Products, supra*, but one seeking such relief bears a "heavy burden of showing justification for the imposition of such a restraint." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971); *Davis v. Romney, supra*.

In a recent Supreme Court decision, the rationale for requiring that a heavy burden be placed on one seeking a prior restraint of the exercise of free speech or publication is set forth forcefully:

"(P)rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. . . . A prior restraint . . . has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time.

The damage can be· particularly great when the prior restraint falls upon the communication of news and commentary on current events. . . ." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2802–03, 49 L.Ed.2d 683 (1976) (footnote omitted).

■ In order to satisfy its "heavy burden justifying a prior restraint" plaintiff, in this suit, is required to demonstrate that the material to be restrained is, indeed, confidential, *and* that its publication would cause plaintiff to suffer serious and irreparable injury. *Cf. New York Times Co. v. United States*, 403 U.S. 713, 726, 730, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

Plaintiff here has failed to satisfy the heavy burden required to justify a prior restraint on the publication of materials produced pursuant to discovery proceedings.

■ Public policy and the spirit of the First Amendment require that any prior restraint be avoided wherever possible. Investigative reporting is not limited to the impeachment of presidents or the exposure of licentious congressmen. The public interest is served equally when reporters find a "Deep Throat" in the executive suite, and when an accounting professor spotlights for the financial press, in common language, business dealings he regards as improper, improvident or unfair to investors. Whether his conclusions are right is to be resolved generally in the free market place of ideas.

The Court regards the relief requested here as an attempt to impose an unlawful prior restraint on a journalist. Were we to condition a grant of pre-trial discovery, itself addressed to our discretion, upon agreement to submit to such restraint, we would be acting contrary to important public policies, and constitutional imperatives, as well as stifling news.

Chancellor Walworth of New York, speaking in 1839, long before enactment of the Fourteenth Amendment to the United States Constitution, refused to enjoin publication of a libel, saying that such power "cannot safely be entrusted to any tribunal consistently with the principles of a free government." *Brandreth v. Lance*, 8 Paige's N.Y.Chanc.Repts. 24 (1839).

*Impossibility of Enforcement*

A further difficulty is presented. Apart from complex process formulae, there is no secret if two or more people know it. Journalists, by subterfuge or otherwise, frequently penetrate secrets of public interest. Leaks of classified matter abound, extending even to our grand jury proceedings. *Cf. In Re Biaggi*, 478 F.2d 489 (2d Cir. 1973).

Although defendants might be prevented from disclosing confidential matters obtained through pre-trial discovery, nothing prevents them from obtaining the same information simultaneously by other clandestine but legitimate journalistic means, *e. g.*, leaks from a Reliance employee, a garbage can check, a confidential informant, surveillance, a careful search of public records, or even by guesswork. It would be impractical, to the point of impossibility, for this Court to determine, if ostensibly protected information is later published, whether defendants came by it in the ordinary fashion, or through violation of our pre-trial order. Any attempt so to inquire would be unduly intrusive into journalistic sources, and have a chilling effect on First Amendment rights, as well as diverting judicial effort from the main objective, which is to get this case ready for trial and try it. I find this argument to be the most powerful in opposition to the proposed order.

For each of the above stated reasons, plaintiff's motion is in all respects denied.

So Ordered.