FIREMAN'S FUND INSURANCE COMPANY, as Subrogee of Frankstown Fooderama, Inc., Plaintiff,

v.

ECM MOTOR CO., Sensormatic, Inc., and Rail Manufacturing Corp., Defendants,

v.

SUPER VALU STORES, INC., formerly Charles Brothers Company, a corporation, Matsushita Electric Corporation of America, d/b/a Panasonic Industrial Co., and Photoscan of Western Pennsylvania, Inc., Frankstown Fooderama, Inc., t/a Frankstown Shop–N–Save and Robert A. Johnsen, individually and d/b/a Video Consulting, Third–Party Defendants.

Civ. A. No. 88–2058.

United States District Court, W.D. Pennsylvania.

Aug. 8, 1990.

Miles Jellinek, Philadelphia, Pa., John Robb, Pittsburgh, Pa., for plaintiff.

Edward C. Schmidt, L. John Argento, George N. Stewart, Richard J. Mills, William Tighe, Harry M. Paras, Daniel Winters, Judy Winters, Pittsburgh, Pa., for defendants.

## MEMORANDUM OF LAW AND PROTECTIVE ORDER

LEE, District Judge.

The matter before the Court for disposition is plaintiff's Motion to Compel Production of Documents.

The cause of action arises out of a fire which occurred at a supermarket occupied by plaintiff's insured, Frankstown Fooderama, Inc. t/a Frankstown Shop–n–Save. Plaintiff alleges that the cause of the fire was the malfunction of a video surveillance camera assembly located in the market's stockroom. The camera was designed to operate in both a panning and a tilting mode.

The camera movement was powered by two (2) 24 volt drive motors which were manufactured and sold by the defendant, ECM Motor Company. The motors were sold to Rail Manufacturing and designated as Model No. 4903. Plaintiff contends that the fire at issue was the result of one of the motors overheating. Plaintiff further claims that one of the defects in the ECM 24 volt motor was its failure to be equipped with a thermal protector which would deenergize the motor in the event of an overheating condition.

In a deposition, James K. Christiansen, Vice President of Marketing and Engineering of defendant ECM Motor Co., admitted that the motor was not thermally protected, but claimed that the motor was impedance protected, which would limit the temperature rise of the motor. According to Mr. Christiansen, the 4903 motors sold by ECM to Rail were not submitted to Underwriters Laboratories, but its 120 volt motors were submitted to Underwriters Laboratories for impedance protection, under File No. 40296.

Following the deposition, plaintiff served ECM with its Request for Production of Documents, and included a request for "A complete copy of File No. 40296 reflecting ECM's submission of 120 volt motors to Underwriters Laboratories." ECM objected to the request, claiming the file was not relevant because it pertained to the 120V 60 HZ Motor and not the 24V motor which is the subject of the lawsuit. ECM also claims that File No. 40296 is confidential.

Plaintiff contends that the UL file it seeks is discoverable because the "information sought appears reasonably calculated to lead to the discovery of admissible evidence" under Fed.R.Civ.P. 26(b)(1). Plaintiff bases such contention on an engineering calculation [1] produced by ECM in response to plaintiff's first Rule 34 request for design plans and specifications for any components of the motor-driven overhead surveillance camera system. The engineer-

---

**1.** See Exhibit "C" of plaintiff's Memorandum of Law in support of Motion to Compel Production of Documents.

ing calculation was based upon the UL file, which the defendant now refuses to produce, and showed a conversion for impedance protected motor from 120V 60HZ to a 24V 60 motor.

Under the liberal discovery permitted by Rule 26(b)(1), the courts have readily allowed information concerning other injuries or accidents pertaining the product at issue or similar products. In the present case, the plaintiff is seeking information concerning a different product, not injuries or accidents concerning such product.

In *Bowman v. General Motors Corp.*, 64 F.R.D. 62 (E.D.Pa.1974), the court permitted discovery of subsequent models of the same automobile in litigation. In response to GM's contention that the fuel tank assembly of the later models was substantially different from that of the subject model, the court noted that "identity is a function not only of component parts, but also of engineering principles." The court refused to adhere to a narrow construction of the notions of similarity and identity, for to do so would have foreclosed meaningful discovery.

Plaintiff's request at issue, may lead to admissible evidence concerning defects in the design of the motors, or dangerous characteristics associated with the impedance protection. Therefore, looking at the totality of the circumstances, plaintiff's request for production should be granted.

■ Defendant requests that, should the court order production of the UL file on the 120V motor, "such production be pursuant to an appropriate confidentiality order to protect ECM." As the party seeking such protection, ECM has the burden of proof that it would be injured by dissemination of the information. *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D.N.Y. 1986). Here, ECM has shown no evidence, or even mere assertions, that the requested information would cause injury, competitive or otherwise.

Notwithstanding ECM's failure to show specific injury which will result from the disclosure, nevertheless, based on the nature of the requested documents and in

light of the background facts, the Court will enter an appropriate protective Order.

See *Zenith Radio Corp. vs. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866 at 891 (E.D.Pa.1981), where in discussing the requirements for a protective order, the Court stated:

"It has been held that in order to show good cause, the injury which allegedly will result from disclosure must be shown with specificity, and that conclusory statements to this effect are insufficient. *United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421 (W.D.N.Y. 1981); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21 (S.D.N.Y.1971); *Hunter [v. International Sys. & Controls Corp.]*, supra [51 F.R.D. 251 (W.D. Mo.1970)]; *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 18 F.R.D. 318 (S.D.N.Y.1955). It has also been held that the specific instances where disclosure will inflict a competitive disadvantage should be set forth in more than the briefs or the hearsay allegations of counsel's affidavit, for a protective order should not issue on that basis alone. See *Reliance Ins. Co. v. Barron's*, supra [428 F.Supp. 200 (S.D.N.Y.1977)]; *Rosenblatt v. Northwest Airlines, Inc.*, supra [54 F.R.D. 21 (S.D.N.Y.1981)]; *Apco Oil Corp. v. Certified Transp., Inc.*, 46 F.R.D. 428, 432 (D.Mo.1969); *Paul v. Sinnott*, 217 F.Supp. 84 (W.D.Pa.1963). We think, however, that hard and fast rules in this area are inappropriate. Frequently the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts. The court's common sense is a helpful guide."

An Order requiring production of UL File No. 40296 with appropriate protective provisions shall be entered.

### PROTECTIVE ORDER

AND NOW, to-wit, this 8th day of August, 1990, after consideration of the plaintiff's Motion to Compel Production of Documents and the Memorandum of Law in support thereof, and the defendant, ECM's, Memorandum in opposition, it is ordered as follows:

(1) Defendant, ECM, shall produce its UL File No. 40296 within 20 days of the date of this Order for inspection and copying by plaintiff's counsel.

(2) The materials and/or documents contained in UL File No. 40296 shall not be disclosed to any person except:

A. The Court;

B. Counsel of record to the parties in the litigation, co-counsel of record, in-house counsel and the legal associates and clerical or other support staff who are employed by such counsel and are actually involved in the preparation of the case for trial; and

C. Experts or consultants retained by the parties or their counsel to assist counsel to prepare this case for trial.

(3) All persons authorized by this Protective Order to receive information from ECM's UL File no. 40296 shall maintain such information as confidential in accordance with this Protective Order and shall use such information solely for the purpose of preparing for and conducting the above-captioned litigation, and none of the contents of said file shall be used for any business, commercial or competitive purposes. All persons authorized to receive copies of the materials or information contained in ECM's UL File No. 40296 shall be shown a copy of this Protective Order and shall, in a written and signed certificate, such as that annexed hereto as Appendix A, state that he or she has read the Protective Order and agrees to be bound by the terms thereof. Counsel of record for that party shall then retain the certificate until the conclusion of the litigation.

(4) In the event that information from ECM's UL File No. 40296 is, either advertently or inadvertently disclosed to someone not authorized to receive such information under this Protective Order, or if a person so authorized breaches any of his or her obligations under this Protective Order, counsel of record for the party involved shall immediately give notice of such unauthorized disclosure or breach to counsel of record for ECM, and shall also disclose the circumstances of the unauthorized disclosure or breach.

(5) Within 30 days of the conclusion of this litigation, including any post-trial motions or appellate proceedings, counsel of record for the parties shall secure the return of all discovery materials and all copies thereof and notes, abstracts or summaries made therefrom, from all persons to whom such materials were disclosed under the terms of this Protective Order, and shall either destroy all such materials or return them to counsel for ECM, except that counsel may retain their work product, copies of court filings and official transcripts and exhibits, provided said retained documents are kept under seal and that the "Confidential" information contained therein will continue to be treated as provided herein.

## APPENDIX A

### CERTIFICATE

I hereby certify that I have read the annexed Protective Order and agree to be bound by the terms thereof.

Date: _____ _____