**J. C. HUNTER et al., Plaintiffs,**

v.

**INTERNATIONAL SYSTEMS & CONTROLS CORP., Defendant.**

**Civ. A. No. 18160–3.**

United States District Court,
W. D. Missouri, W. D.

Jan. 26, 1972.

Harry A. Morris, Donald H. Loudon, Morris, King, Stamper & Bold, Kansas City, Mo., for plaintiffs.

Allan L. Bioff, James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

## ORDER DENYING PLAINTIFFS' MOTION TO STRIKE AND IMPOSING SANCTIONS ON DEFENDANT UNDER RULE 37(b)(2)(E), F.R.CIV.P., IN THE SUM OF $2400 PLUS 6% INTEREST FROM DATE OF THIS ORDER UNTIL PAID TO PLAINTIFFS

WILLIAM H. BECKER, Chief Judge.

Plaintiffs in this action have sued the defendant for alleged breaches of contracts by and between plaintiffs and defendant whereby defendant allegedly promised to purchase a corporation formed by plaintiffs and to employ plaintiffs and pay them in accordance with certain terms in an employment contract, which is also sued upon. The factual contentions which form the basis of this action are more fully stated in Hunter v. International Systems & Controls Corp. (W.D.Mo.W.D.) 51 F.R.D. 251. In that order, this Court ruled upon discovery motions made by the plaintiff, noted that there had been significant failures of defendant to make discovery, and suggested the possibility of imposing sanctions based upon that failure. Plaintiffs subsequently filed a motion to impose sanctions and defendant filed suggestions in opposition to the motion. Because both parties requested a hearing on the motion, determination of the motion was stayed until a hearing date could be fixed and the hearing held. The hearing was subsequently held on July 8, 1970, and the decision reserved until this time.

■ Again, the basic facts relevant to the issue of sanctions are contained in Hunter v. International Systems & Controls Corp., *supra*, 51 F.R.D. 251. In that order, the Court made note of defendant's significant failures to make discovery, including the following:

(1) Failure to give responsive answers to plaintiff's interrogatories 26, 27, 28, 30, 31, 49, 51 and 53; and

(2) failure to answer interrogatories propounded by plaintiff on June 2, 1970, until August 18, 1970, or to respond to requests for admissions until August 21, 1970.

In the motion for sanctions subsequently filed by plaintiffs, plaintiffs requested sanctions as follows only with respect to the failure responsibly to answer interrogatories Nos. 26, 27, 28, 30 and 31:

(1) that "Defendant, because of its unjustified failure to make a responsive answer to interrogatories No. 26 and 27 as noted on page 17 of said Order entered September 10, 1970, should be denied the right to oppose any claim by plaintiffs herein for additional compensation based on adjusted gross profit or diversions therefrom arising from any contracts of defendant's subsidiary with the Government of Guyana in the years 1967, 1968 and 1969. Further, defendant should be specifically prohibited from introducing any evidence to disprove or question plaintiffs' right to claim adjusted gross profits or diversions therefrom under the contract with defendant arising from any business relationship of defendant or any of its subsidiaries with the government of Guyana in the years 1967, 1968 and 1969;"

(2) that "Defendant, because of its unjustified failure to answer Interrogatory No. 28 in a full and complete manner as noted on page 20 of said Order entered September 10, 1970, and because of its unjustifiable and unreasonable misconstruction of interrogatories 30 and 31, as noted on page 20 of said Order entered September 10, 1970, should be

denied the right to oppose or raise any defense in regard to the claim of plaintiffs that all sales of bolted steel tanks by Black, Sivalls & Bryson, Inc. in the years 1967, 1968 and 1969 were includable in the formula for computing adjusted gross profit and the determination of any additional compensation payable to plaintiffs resulting from said adjusted gross profit in said years and that defendant may not introduce any evidence to reduce the total dollar volume of bolted steel tank sales reported in defendant's original answer to interrogatory No. 28."

Defendant, in return, has strenuously resisted any imposition of sanctions, contending that its answers to those interrogatories—or to any of the interrogatories reviewed by the Court in its order of September 10, 1970, reported in Hunter v. International Systems & Controls Corp., *supra*, 51 F.R.D. 251—neither constituted a failure to make discovery nor a wilful failure to make discovery. It is well settled that under new Rule 37(b) and (d), F.R.Civ.P., the failure to make discovery need not be wilful in order to justify the imposition of sanctions. See Advisory Committee Note to Rule 37, F.R.Civ.P., as amended July 1, 1970, 48 F.R.D. at 539, to the following effect:

"In Societe Internationale v. Rogers, 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255] (1958), the Supreme Court concluded that the rather random use of these two terms in [the old] Rule 37 showed no design to use them with consistently distinctive meanings, that 'refused' in [old] Rule 37(b)(2) meant simply a failure to comply, and that wilfullness was relevant only to the selection of sanctions, if any, to be imposed. Nevertheless, after the decision in the Societe, the court in Hinson v. Michigan Mutual Liability Co.,

275 F.2d 537 (5th Cir. 1960) once again ruled that 'refusal' required wilfullness. Substitution of 'failure' for 'refusal' throughout Rule 37 should eliminate this confusion and bring the rule into harmony with the Societe Internationale decision."

See also Dorsey v. Academy Moving & Storage, Inc. (C.A.5) 423 F.2d 858, 861; Norman v. Young (C.A.10) 422 F.2d 470, 473, where it is said:

"In [Societe Internationale Pour Participationes Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)], although there was a failure to produce documents, there was an obvious good faith attempt to comply with the court order; . . . Notwithstanding the presence of bona fides, the Rogers court held relief under Rule 37 to be proper and further stated that 'refuses to obey' simply means 'failing to comply with an order.' "

See also Bollard v. Volkswagen of America, Inc. (W.D.Mo.) 56 F.R.D. 569, 1971, and cases therein cited. While the issue of wilfulness may be relevant to the type and stringency of the sanction which is to be imposed, it is not necessarily to be considered when determining the issue of *whether* sanctions should be imposed. Rule 37, *supra*; Societe Internationale Pour Participationes Industrielles et Commerciales, S.A. v. Rogers, *supra*; Dorsey v. Academy Moving & Storage Co., Inc., *supra*; Norman v. Young, *supra*; Bollard v. Volkswagen of America, Inc., *supra*. On that issue, the test is whether there has been a failure to make discovery.

Defendant has contended that its answers to interrogatories Nos. 26, 27, 28, 30 and 31 did not constitute failures to make discovery in that the answers given by it to those interrogatories were not really unresponsive. The contention will be taken up in numerical order with respect to the several interrogatories.

*Interrogatories 26 and 27*

The following constitutes the ruling made by the Court on the answers to interrogatories 26 and 27 in the order of September 10, 1970:

". . . [A]nswers to interrogatories Nos. 26 and 27 . . . are insufficient in that they do not include the adjusted gross profit. Interrogatory No. 26 reads as follows:

'State the total dollar volume of the 1967 contract with the Government of Guyana for a feasibility and engineering study of rice, storage, drying, milling and processing installations by Rhodes Corporation and state the amount of adjusted gross profit received on such contract by Rhodes Corporation, if any.'

"The answer reads as follows:

'Rhodes Corporation was a member of the joint venture which entered into in 1967 a feasibility and engineering study contract with the Government of Guyana and, pursuant to that contract, Rhodes Corporation's share of the total billings was $221,114.90. This was a fixed fee contract and Rhodes received two-thirds of the fixed fee. The amount of the fixed fee was $15,464. Adjusted gross profit (as that term is used in Exhibit "A" to the complaint herein) is not a term which has any application to the contract with the Government of Guyana and such an adjusted gross profit has not been calculated with respect thereto.'

"Interrogatory No. 27 inquires as follows:

'State the dollar volume of the final design engineering contract entered into by defendant or any subsidiary thereof with the Government of Guyana pertaining to rice, storage, drying, milling and processing installations and give full details as to the date of such contract, name of actual contracting corporation and dollar amounts received on said contract in any of the years 1968, 1969 or 1970 and the adjusted gross profit received to date in any such years from said contract.'

"The answer to interrogatory No. 27 is as follows:

'Rhodes Corporation and the Government of Guyana entered into a contract dated May 15, 1968 for the final design engineering of certain rice facilities. Rhodes Corporation's total billings pursuant to this contract were $251,548.14. The receipts pursuant to this contract were $146,733.47 in 1968 and $97,248.23 in 1969. Under said contract Rhodes Corporation received a fixed fee of $14,605. Adjusted gross profit (as that term is used in Exhibit "A" to the complaint herein) is not a term which has any application to the contract with the Government of Guyana and such an adjusted gross profit has not been calculated with respect thereto.'

"Only defendant, however, knows all of the figures by which the adjusted gross profit must be calculated under the contract herein sued upon and in respect of the contract inquired into by the above interrogatory. It does not appear, and defendant has not stated, that it would be overly burdensome for defendant to calculate what it contends the adjusted gross profits to be. Neither the gross profit nor the name of the 'actual contracting corporation' has been supplied. Therefore, the Court will consider the unjustified failure to attempt to make a responsive answer to this interrogatory on the issue of whether to impose sanctions, which will be considered later. Meantime, the information given in these answers, for the reasons stated in connection with interrogatory No. 4, will be made available to plaintiffs."

Defendant now insists that it made the "actual contracting corporation" clear by stating in the answer that "Rhodes Corporation and the Government of Guyana entered into a contract." But, in interrogatory 26, plaintiff has referred to the contract as one between Rhodes and Guyana and has gone on to ask whether it was the "actual contracting organization" in 27. Defendant should have made clear that Rhodes, specifically, was the "actual contracting corporation," if it was.

With respect to the "adjusted gross profit" aspect of the interrogatories, defendant states that "adjusted gross profit" has "no meaning as set forth in that formula," and goes on to say that:

"Plaintiffs are fully aware that the adjustments to gross profit provided in the formula cannot be applied to any given sale or contract. The adjustments are to be made on the total business of any given year. It was never contemplated under the contractual formula that an adjusted gross profit could be calculated or was to be calculated for any single sale or contract."

Defendant says it can give the "gross profit", as in answer to interrogatory 55. It also refers the Court to interrogatory answers 21–25, 28–30 and 50 stating that there is no such thing as "adjusted gross profit" in respect to single sales or contracts.

Defendant continues as follows:

"As developed at the pretrial conference held on September 17, 1970, what plaintiffs really wanted in answer to interrogatories numbered 26 and 27 was a breakdown of the billings to the Government of Guyana, not an adjusted gross profit. At a conference of counsel on September 25, counsel for defendant informed counsel for plaintiffs that the Guyana billings were available for their inspection. Counsel for plaintiffs inspected the billings on October 6.

"In addition to interrogatory answers 26 and 27, inspection of the Guyana billings, and the documents which defendant produced pursuant to paragraphs 23 through 26 of plaintiffs' request for inspection of documents, plaintiffs also had discovery with regard to the Guyana contracts in their deposition of D. L. Goldy. In summary, plaintiffs have been supplied with all requested discovery pertaining to the Guyana contracts. Since plaintiffs have all the information they requested and which can be supplied on the Guyana contracts, there is no basis for plaintiffs' request of a sanction limiting defendant in its evidence concerning the Guyana matter."

██ According to the contract, the "adjusted gross profit" is to equal sales on Accounts #7210 (Bolted Steel Tanks), #7218 (Walkways) and #7259 (Hunter-Wagner Products) minus "Cost of sales (location 417) (Actual costs or standard costs with cost of sales adjustments)" minus "Adjustments to gross profit" including salaries paid to Hunter and Wagner, travel expenses, "R & D" expenses, and advertising expenses. There appears to be no reason why these amounts could not have been given for each sale or contract, as requested by plaintiffs. The refusal to give the information on the ground that the defendant unilaterally and without seeking a ruling of the Court concluded "adjusted gross profit" had no meaning in regard to these sales and contracts constituted a wilful obstruction of discovery when defendant was possessed of the information (as it now admits) which would have allowed it to calculate the "adjusted gross profit" for each sale or contract. In addition defendant could have objected and sought clarification of its obligation to answer but did not.

██ Further, because plaintiffs' motion for sanctions was filed on September 29, they must not have been satisfied with the discovery belatedly of-

fered by defendant on September 25. And it is irrelevant to the question of whether there was a failure to make discovery to consider whether the moving party was later willing to settle for other materials than were originally requested. The purpose of Rule 37, *supra*, is to secure compliance with discovery rules and orders. B. F. Goodrich Tire Co. v. Lyster (C.A.5) 328 F.2d 411; Robison v. Transamerica Ins. Co. (C.A.10) 368 F.2d 37. If defendant felt that plaintiffs desired other information instead of that explicitly requested in the interrogatories, it should have filed an objection to the interrogatories or otherwise ascertained before answering that plaintiffs actually desired other information.

*Interrogatories 28, 30 and 31*

With respect to interrogatories 28, 30 and 31, on September 10, 1970, the Court made the following ruling:

"Plaintiffs also move for further answers to their interrogatories numbered 28, 30, 31, 37, 49, 51 and 53. Interrogatory No. 28 inquires as follows:

'State each and every customer of Black, Sivalls & Bryson, Inc., which purchased bolted steel tanks and the total dollar volume of such purchases and the adjusted gross profit (as that term is used in Exhibit "A" to the complaint herein) thereon for any other customers in the years 1966, 1967, 1968 or 1969 not specifically called for by Interrogatories Nos. 21 through 24 or No. 13 herein.'

Defendant's answer is as follows:

'Sales of bolted steel tanks by Black, Sivalls & Bryson, Inc. were not tabulated on an individual customer basis during the years 1966–1969. The total dollar volume of sales of bolted steel tanks to all customers, as recorded in the general ledger, was

| Years | Amounts |
|-------|---------|
| 1966 | $1,335,599.82 |
| 1967 | $1,357,670.59 |
| 1968 | $3,144,384.61 |
| 1969 | $2,923,163.02.' |

Defendant cites cases and contends that it is not required under the circumstances to make extensive tabulations in order to answer the interrogatories. But plaintiffs have stated, in support of their motion to compel discovery, that '[d]efendant attempts to evade the question by stating sales were not tabulated on an individual customer basis but ignores the request to identify various customers not otherwise known to plaintiffs.' The interrogatory should therefore be construed to request a list of customers other than those whose names were supplied in prior interrogatories. The motion to compel an answer to this interrogatory so construed should therefore be granted. The relevance of the projected and made sales of bolted steel tanks to the claim for additional compensation is clear.

"Interrogatory No. 30 requests the total dollar volume of bolted steel tanks sold outside of the United States by Black, Sivalls & Bryson, Inc. for various years and the amount of adjusted gross profit received on such sales. Because the interrogatory was phrased to ask for 'sales of bolted steel tanks made outside of the United States by Black, Sivalls & Bryson, Inc.,' defendant has deliberately misconstrued the interrogatory and has answered as follows:

'None, because there were no bolted steel tanks made outside of the United States by Black, Sivalls & Bryson, Inc. during the years 1966–1969.'

But the intent of the interrogatory is obviously to ask for sales made outside the United States, especially in

view of interrogatory No. 31, which reads as follows:

'For any of the years in which sales were made outside of the United States by Black, Sivalls & Bryson, Inc. as shown by response to Interrogatory No. 30 herein, state the name of each customer buying such tanks and specify the date and dollar amount of each such sum.'

An answer should therefore be required of defendant respecting its foreign sales of the bolted steel tanks. Defendant objects that 'under the contract in suit, it is immaterial whether the sales were made to foreign or domestic customers.' But plaintiffs are entitled to the information in order to have a complete picture of sales of products which were contemplated under the allegedly breached contract. For the same reasons, defendant should be required to give a specific, detailed answer to interrogatory No. 31. Defendant's deliberate misconstruction of interrogatory No. 30, especially in view of the order entered herein on July 23, 1970, ordering defendant to answer within 5 days, constitutes a failure to make discovery without substantial justification and will later be considered, among other things, as a basis for possible sanctions under Rule 37(b)(2), F.R.Civ.P., as discussed below."

With regard to its answer to interrogatory 28, defendant states that a supplementary answer which was later filed by it was based upon a document-by-document search of sales order and invoice files expending 115 man hours of time; that the supplementary answer was shown to plaintiffs on September 25 "and was said by them to be satisfactory."

With regard to Interrogatories 30 and 31, the following is stated by defendant:

"[With respect to] interrogatories numbered 30 and 31 and the answers to those interrogatories set forth and discussed by the Court at pages 8 and 9 of the order dated September 10, 1970, Counsel for defendant emphatically deny there was any deliberate misconstruction of these two interrogatories. Interrogatory numbered 30 asks for the 'total dollar volume of any sales of bolted steel tanks made outside of the United States by Black, Sivalls & Bryson, Inc.' Black, Sivalls & Bryson, Inc. does have foreign sales operations, but it does not make bolted steel tanks except in the United States. The company does make foreign sales of bolted steel tanks made in the United States. Interrogatory numbered 31 does not support the conclusion that interrogatory numbered 30 was deliberately misconstrued. To the contrary, interrogatory numbered 31 asks for sales made outside of the United States of bolted steel tanks made outside of the United States. It does not ask for foreign sales of bolted steel tanks made in the United States. Assuming the Court is correct in its construction of the wording of these two interrogatories, the interrogatories are, at very best, totally ambiguous. With all due respect, the construction of the wording of these two interrogatories suggested by plaintiffs and adopted by the Court is contrary to the plain meaning of the English language. How else would the interrogatories have been worded if plaintiffs had wanted to seek information as to the foreign sales of foreign made tanks?

"Following the order of September 10 and the pretrial conference of September 17, foreign sales data was secured. Draft answers of supplementary 30 and 31 were reviewed with plaintiffs' counsel on September 25, at which time it was agreed the information was satisfactory."

Again, the supplemental answers to 28 were purportedly shown to plaintiffs' counsel on September 25 and the motion for sanctions was not filed until the 29th. Therefore, it is not clear that

plaintiffs were satisfied with the answer. Further, the considerations noted above are not relevant to the issue of whether sanctions should be imposed.

 Neither in the hearing or otherwise has defendant made it clear how Interrogatories 30 and 31 could have been misconstrued by defendant other than deliberately, particularly since they imply plaintiffs knew that they made no foreign tanks, and since interrogatory 31, clearly refers to 30 as asking for foreign *sales*. The evidence on this issue hardly would warrant the Court in making any determination to strike its finding in the order of September 10, 1970, that defendant's misconstruction of interrogatory was "deliberate." Independently it is found that this misconstruction and failure to make discovery was a callous disregard of discovery obligations, and a designing, self-serving unilateral construction of interrogatories 30 and 31. The wording of the interrogatories and answers themselves would not lead to any other reasonable conclusion.[1]

Plaintiffs also state that documents to be produced under the Order of September 10, 1970, were late. This was shown by substantial evidence at the hearing and by the files and records in this case to be true. The above are the only failures to make discovery with respect to which sanctions are requested by plaintiffs; but in the Order of September 10, 1970, the Court also mentioned the following other matters, which are noted as background only.

### Other Matters

In the order of July 23, 1970, the court noted that interrogatories filed by plaintiffs on June 2 and requests for admissions filed June 3 had not yet been answered. Answers were ordered to be made in 5 days. Plaintiffs state that they were not served with answers until August 3, 1970. The Court stated:

"(1) Defendant failed timely to answer or respond to plaintiffs' interrogatories or requests for admissions. In the order of this Court filed on July 23, 1970, it was noted that:

'The record herein show that the interrogatories were filed on June 2, 1970, and the requests for admissions on June 3, 1970. It therefore appears that answers are out of time under the provisions of Rule 33, F.R. Civ.P., and that plaintiffs are partially to blame for this situation in that they have taken no steps to compel answers or responses, either by motion in this Court, or otherwise on the record.

'On July 21, 1970, counsel for defendant telephoned the Court to state that he consented to the motion for extension of discovery. In a case where defendant has delayed in answering interrogatories and in responding to requests for admissions past the time allowable under the Rules of Civil Procedure, such consent does not offer the Court justifiable grounds on which to grant the extension.

'In the interest of justice and in the desire of reaching the merits of this action, however, a briefer extension than sought will be granted.'

In the same order, it was ordered that the answers to interrogatories and responses to requests for admissions be filed within 5 days. Attempts to extend time for discovery without

---

1. A request by plaintiffs that defendant should pay $406.44 as expense of taking depositions in Houston. This was later withdrawn as moot, upon the payment of the expense by defendant.

leave of court are forbidden by the orders in this case and by local practice.

"(2) As noted above, the interrogatory answers, in main part, were not served until August 3, 1970. The answers to interrogatories 4, 26 and 27 were not filed until August 18, 1970, and the answers to 26 and 27 were insufficient and unresponsive. Responses to requests for admissions were not served until August 12, 1970, and not filed until August 14, 1970. Answers to interrogatories 21, 22, 23 and 24 have yet to be filed. And defendants unjustifiably and unreasonably misconstrued interrogatories 30 and 31 in order to avoid fully answering them.

"(3) Defendant's repeated obstruction of discovery and violation of orders of this Court necessitated a request for further extension of discovery, which was filed on August 21, 1970. This request was made in spite of the order of July 23, 1970, that '[b]oth parties * * * are forewarned that no further extensions will be granted in the absence of extraordinary circumstances.' In the resulting order of August 21, 1970, designating this case as a complex case and ordering the parties to supply a proposed order further extending discovery, it was noted that '[c]ounsel in this case have repeatedly requested extensions of time for the completion of discovery and have not been able to prepare this case under Standard Pretrial Order No. 1.'

"(4) Defendant did not timely assert its defenses of estoppel and accord and satisfaction in a possible attempt to delay or deny discovery on these issues.

"The above enumerated facts, as well as the failure fully to answer interrogatories 28, 37, 49, 51 and 53, will be considered on the issue of whether to impose sanctions when the pretrial conference in this cause is held at 2 P. M. on September 14, 1970."

Defendant now states in respect to these issues that:

"With regard to the requests for admissions directed to defendant, the response was served and filed July 24. Defendant does not know the source of the dates of August 12 and 14 referred to by the Court at page 19 of the September 10 order. The request for admissions did not state a time within which a response was to be made (contrary to the provisions of former Rule 36), and the response was filed as soon as the information necessary to make the response was available."

As the Court has noted in an earlier order correcting the order of September 10, 1970, the dates August 12 and August 14 are in error. However, the error was in defendant's favor for the following reasons:

(1) The responses filed on July 24, 1970, were not complete; and

(2) "Amendments to response to request for admissions" were served and filed on August 21, 1970, without leave of court, when the order of July 23, 1970, had directed responses to be filed within 5 days.

Therefore, the earlier order amended the order of September 10, 1970, to state that *complete* responses were not served or filed until August 21, 1970. Certainly, this clerical error does not justify or excuse the fact that defendant failed to abide by the discovery rules in this regard.

■ Under former Rule 36, when a time is not stated in the request for admissions, a "reasonable" time is to be allowed, Trabon Engrg. Corp. v. Eaton

Mfg. Co. (D.Ohio) 37 F.R.D. 51. It is readily apparent that the responses to requests for admissions were neither served nor filed within a reasonable time, when complete responses to requests for admissions were not made within five days of July 23, 1970, as ordered by the Court.

In further argument against imposition of sanctions for failure to make timely answers to interrogatories defendant states:

"With regard to the answers to interrogatories, all answers except 4, 21–24, 26 and 27 were supplied to counsel for plaintiffs under cover of letter dated July 24. An unexecuted copy of the answers was supplied at that time so there would not be any further delay in getting the information to counsel for plaintiffs. This was done intentionally and not as any mistake. (See letter attached to Defendant's Suggestions Opposing Plaintiffs' Motion to Compel Discovery.) An unexecuted copy of the answers was supplied to counsel for plaintiffs on August 3 and it did not deviate, in any way, from the unexecuted answers previously supplied. Messrs. Bioff and Duncan were on vacation during the week of July 27. They believed that adequate instructions had been left to serve counsel for plaintiffs with an unexecuted copy of the interrogatory answers when the answers were filed on July 28. Regardless, counsel for plaintiffs had the information by July 25, which was within the time provided in the order of July 23."

But the order of July 23, 1970, directed that the answers be served and *filed* within 5 days. No extension of the time for good cause was requested or granted. The violation of the order of July 23, 1970, could itself constitute a basis for the imposition of sanctions. See Parrett v. Ford Motor Company (W.D.Mo.) 52 F.R.D. 120.

*Interrogatories 37, 49, 51 and 53*

In the order of September 10, 1970, the Court ruled as follows with respect to interrogatory 37:

"Interrogatory No. 37 inquires as follows:

'State if defendant arranged for and made the acquisition of any corporation or the assets thereof other than Hunter-Wagner Co., Inc., during the years 1965, 1966, 1967, 1968, 1969 and 1970 where the final compensation to be paid by defendant under the agreement or agreements concerning any such acquisition was dependent upon future performance of personnel or future earnings of the acquired corporation after the date of acquisition and, if so, state full details and describe the basis of any such additional compensation.'

"The answer is as follows:

'Note 5 to the consolidated financial statements of defendant, appearing at page 45 of defendant's 1969 annual report (copy of which has been previously supplied by defendant to plaintiffs), states certain arrangements whereby the final consideration to be paid in connection with the acquisition by defendant of certain subsidiary companies is dependent upon the future earnings of the acquired subsidiaries. In addition, defendant has authorized Series J and K cumulative preferred stock in connection with the acquisition of Owens Manufacturing, Inc. and the Series K is reserved for future issue based on earnings of Owens Manufacturing, Inc.'

"Plaintiffs contend that the 'answer submitted is evasive and merely refers to various financial statements for the year 1969 without making a detailed response.' Defendant states that in answering the interrogatory, the note referred to read as follows:

'Shares reserved for future issue are 38,500 Series D shares based

on earnings of the Pemar Companies, subsidiaries of the Company, through 1973, and 18,181 Series H and 2,425 Series I shares based on earnings of Reed-Joseph during the period from January 1, 1970 to November 30, 1974. Shares issued and held in escrow for future release are 20,650 Series E shares and 22,740 Series F shares based on earnings of Thomas during each of the five years ending December 31, 1973 and 72,500 shares of Series I based on earnings of Reed-Joseph from January 1, 1970, to November 30, 1974. All or a portion of shares held in escrow will be returned to the Company if earnings for the periods indicated are less than certain specified amounts. Based on the earnings of Thomas for the year ending December 31, 1969, 2,146 Series E shares will be released from escrow in 1970.'

"But details respecting the future issue based on the future earnings of Owens Manufacturing, Inc., including the amount of future earnings and such 'certain specified amounts' and other required amounts of earnings are not given in respect of the other companies above. Further, the information which may be relevant to this action regarding the descriptions of the respective series and the dates of the future issue for Owens are not included. The motion to compel further direct answer to this interrogatory should be granted, provided that if the details are reduced to agreements in writing and accounts in documents, the detail may be provided in the form of copies of documents attached on originals simultaneously produced for inspection."

Defendant now states as follows:

"Defendant felt its answer to this interrogatory was responsive in that it gave the identify of each subsidiary and described the basis upon which final compensation was to be paid. The Court concluded the answer was not sufficiently detailed and a supplementary answer has been filed under seal. There was certainly no bad faith or deliberate attempt to obstruct discovery in the answer as originally made to No. 37."

■ On September 18, 1970, however, defendant filed a supplemental answer to this interrogatory, some 7 pages long, which gives much more complete information which was available to the defendant earlier at all material times. The supplemental answer is itself evidence of a prior failure by defendant to make a proper answer to this interrogatory.

The ruling made by the Court in the Order of September 10, 1970, on Interrogatory 49 was as follows:

"Interrogatory 49 reads as follows: 'State if any notice was given to any labor organization by defendant concerning sale or closing of the manufacturing plant of Black, Sivalls & Bryson, Inc. located in Kansas City, Missouri, prior to January 1, 1970, and, if so, state full details, including the contents of any document, letter or paper giving such notice.'

"Defendant contends that its answer to interrogatory No. 48 is satisfactory as an answer to this interrogatory, also. It reads:

'In July 1969 officials of Local 1962, United Steelworkers of America were advised by Black, Sivalls & Bryson, Inc. that there was a possibility of the sale of all or any part of the Kansas City plant operations and full discussions were had at that time with the union representatives regarding the matter. In September, 1969, the union officials were advised, both verbally and in writing, by Black, Sivalls & Bryson, Inc. that thoughts of selling the entire Kansas City plant operation had been "shelved". In December,

1969, the Union officials were advised by Black, Sivalls & Bryson, Inc., both verbally and in writing, that the possibility of selling the Kansas City operation was again under active consideration and full discussions were had with union officials at that time regarding the matter. Subsequently, the union was informed from time to time, both verbally and in writing, regarding the status of efforts to find a possible buyer.'

"But the answer does not state the contents of the notices sent to the Union, nor does it advise of their character as actual, formal notices. Further, information concerning the contents of the notices 'regarding the status of efforts to find a possible buyer' are not included. Defendant states that these details will be provided by its compliance with paragraph 5 of plaintiffs' motion for production, which calls for all written communications between defendant and local 1962 of the United Steel Workers of America. Unless that production of documents has meantime supplied the requested information, the defendant should more fully answer this interrogatory, as specified above."

Defendant now contends:

"This answer was responsive in that it did state the contents of the notices. While the answer does not advise of the character of the notices, that information is not called for by the interrogatory. With regard to the status of efforts to find a possible buyer, that was not a matter which arose until after January 1, 1970 and the interrogatory, by its terms, is limited to notices prior to January 1, 1970. In any event, copies of the letters to the local union were furnished to counsel for plaintiffs pursuant to paragraph 5 of plaintiffs' request for production of documents and this was done in mid-August."

Also, a "supplemental answer" to the interrogatory filed September 18, 1970, reads as follows:

"Counsel for plaintiffs have been furnished the documents called for in paragraph numbered 5 of plaintiffs' Request for Production of Documents. The Court's Order of September 10, 1970 provides 'unless that production of documents has meantime supplied the requested information, the defendant should more fully answer this interrogatory.' The furnished documents provide detailed information regarding the notices given to the union concerning the possible sale of the Kansas City plant."

The original answer to this interrogatory obviously did not state clearly the contents of the notices as clearly required. Again no objection to the interrogatory was made by defendant.

The order of September 10, 1970, read as follows in regard to interrogatory 51:

"Interrogatory No. 51 reads as follows:

'State if defendant or any agent thereof has made any offer to sell or negotiated for the sale of the manufacturing plant of Black, Sivalls & Bryson, Inc. located in Kansas City, Missouri, since January 1, 1970, and, if so, state full details, including indentification of any prospective buyer.'

"Defendant's answer is:

'Discussions have been held between certain representatives of Black, Sivalls & Bryson, Inc. who are also officials of ISC and possible buyers of the Black, Sivalls & Bryson, Inc. Kansas City plant operations. If at some time it is determined by the court that the identify of such possible buyers is relevant to the issues herein, the identify of such possible buyers will be disclosed to the court in camera.'

"It is clear, however, that subjects relevant to the subject matter of this

action might have been discussed in the negotiations, including the projected sales of plaintiffs' products, and, further, as noted above, the fact that the negotiations for sale took place could constitute an issue. The prospective buyers would have possible knowledge of the discussions of these relevant subjects. The defendant has no right, unilaterally, without a protective order, to decree that there may be a production in the future *in camera*. Therefore, the additional answer should be compelled without delay or conditions."

Defendant now states:

"Defendant should have filed an objection to this interrogatory. Counsel for defendant did not realize, at the time interrogatory objections were due, that the identity of the possible buyers of the Kansas City plant was considered by defendant to be very confidential. Subsequent to the order of September 10, counsel for plaintiffs were provided the documents called for in paragraph numbered 6 of the request for production of documents and these documents fully answer interrogatory numbered 51."

But from the original answer made by defendant, it appears that the defendant made a conscious election to evade answering rather than to object or to seek a protective order. In that answer and in none of defendant's pleadings filed before or after do any facts appear which would justify the Court in concluding that the information was confidential within the meaning of the law regulating discovery. In fact, no conclusory contention of legal confidentiality or immunity to discovery has been presented to the Court by defendant.

■ The order of September 10, 1970, read as follows with respect to interrogatory 53:

"Interrogatory No. 53 inquires as follows:

'State if Black, Sivalls & Bryson, Inc. has ordered or caused the closing or partial closing of its manufacturing plant located in Kansas City, Missouri, since January 1, 1970, and, if so, state full details of any such action.'

"The answer is as follows:

'Black, Sivalls & Bryson, Inc. is in the process of closing the agricultural product line at its Kansas City plant.'

Plaintiffs contend that the answer fails to respond to the portion of the interrogatory calling for 'full details of any action revealed in response to the first portion of the interrogatory.' Defendant contends that there are no relevant 'other details.' It appears that at least the projected closing date and the products included in the agricultural line should be additionally stated. A supplemental answer will therefore be ordered."

Defendant now states:

"Plaintiffs probably expected to receive an answer to No. 53 relating to the bolted steel tank product line. The bolted steel product line is still in full operation at the Kansas City plant. The answer does refer to the closing of the agricultural product line which has nothing to do with this action. A supplemental answer has been filed which sets forth the information called for by the Court at page 14 of the September 10 order."

The supplemental answer reads as follows:

"Defendant's original answer to this interrogatory, filed July 28, 1970, stated that Black, Sivalls & Bryson, Inc. was in the process of closing the agricultural product line at its Kansas City plant. Since that time, the product line, for all intents and purposes, has been closed out, the last productive activity having occurred in mid-August. The agricultural product line consisted principally of the manufac-

ture of grain bins, bulk feed tanks, corrugated hopper bottom tanks, bacon bins and replacement parts."

It appears that the supplemental answer was necessary—even if defendant's construction of the interrogatory was correct—to ascertain that bolted steel products were not included in the agricultural product line. Further, it is a dangerous practice which incurs the risk of possible sanctions for a party to limit an interrogatory addressed to it to only a portion of the information which it explicitly requests. Parties like witnesses are required to state the truth, the whole truth and nothing but the truth in answering written interrogatories.

Defendant finally states, under the heading, "Defendant has not obstructed discovery in this case", the following:

"Plaintiffs filed a request under Rule 34 for the production of documents. This request contained 26 categories of documents. On August 14, counsel for the parties met and reviewed the request for production of documents and reached agreement as to all items except the documents called for in paragraph numbered 6. Defendant filed its objection to paragraph numbered 6, stating what it believed were valid grounds for the objection. The Court's discussion of paragraph 6 of the motion for production is set forth at pages 3–5 of the September 10 order. Defendant was proceeding in good faith in objecting to paragraph numbered 6. Rule 37(a)(4), F.R.Civ. P., is surely not intended to penalize an objection made in good faith, simply because the objection is overruled. Rather, it appears that this rule was intended to deter 'frivolous . . . objections to discovery'. 48 F.R.D. 540. Defendant's objection to paragraph 6 was substantially justified, particularly since plaintiffs are now directly competing with their former employer, Black, Sivalls & Bryson, Inc. It is difficult to imagine more valuable business intelligence than

knowing your competitor's current and projected profit margins."

But the Court did not suggest in the order of September 10, 1970, imposing any sanctions in respect of the overruled objections to the motion for production.

*Imposition of Sanctions*

 As noted above, sanctions may be justified under Rule 37, *supra*, for failure to make discovery. The facts in this case, as set out above, sufficiently establish that there has been in this case a failure of the defendant to make discovery in this case in respect to answering interrogatories. While not necessary to the decision to impose sanctions as an independent ground it is found that this failure was persistent and wilful. Under the provisions of Rule 37, F.R.Civ.P., for failure to answer interrogatories, the Court may (A) order that facts relevant to the failure to answer be "taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order"; (B) order that defendant may not present certain claims, defenses or evidence; (C) strike pleadings, stay the action until the order is obeyed, dismiss the action or render a default judgment; or (D):

"In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

The selection of the proper sanction is in the sound discretion of the trial court. Diaz v. Southern Drilling Corp. (C.A.5) 427 F.2d 1118. Under all the circumstances of this case, it is determined that the sanctions to be imposed should be attorney's fees of $2400 plus interest at 6% per annum from the date of this order to be paid by the defend-

ant. On the basis of the facts as noted above, it is concluded that the failure to make discovery was in fact persistent, wilful and that the award of attorney's fees is further justified by that fact. In the hearing held on the motion to impose sanctions in this case, the evidence showed, in addition to the facts found above, that in June 1970, defendant's counsel impliedly assured that all answers to interrogatories would be forthcoming shortly. The implication was made while no objections were pending and the defendant was in default in answering the interrogatories. Counsel for defendant at that time told the plaintiff's counsel that they were working toward receiving the answers to the interrogatories soon. The reasonable conclusion is that defendant twice ignored the discovery orders in this case without seeking an extension of time, which is not controverted by credible evidence.

### Motion to Strike

■■■■ Plaintiff has also moved to "strike paragraphs 6, 7, 8 and 9 of defendant's Answer filed herein on April 8, 1970, for the reason that said paragraphs contain only insufficient defenses to the claims of plaintiff and for the further reason that such paragraphs are immaterial to this action." The challenged paragraphs of the answer are set forth below:

"6. Further answering Count I of the Complaint, defendant states that plaintiffs, and each of them, have breached and are continuing to breach the provisions of Exhibit A to the Complaint and each of them has breached and continues to breach the provisions of Exhibits B and C respectively to the Complaint; that by reason of such breaches plaintiffs, and each of them, have forfeited their alleged right to receive payment of the final installment referred to in paragraph 9 of the Complaint.

"7. Further answering Count I of the Complaint, defendant states that plaintiffs, and each of them, have breached and are continuing to breach the provisions of Exhibit A to the Complaint and each of them has breached and continues to breach the provisions of Exhibit B and C respectively to the Complaint; that by reason of such breaches by plaintiffs, and each of them, there has been a failure of consideration for the alleged final installment referred to in paragraph 9 of the Complaint; and that defendant therefore is relieved of any alleged obligation to pay such final installment.

"8. Further answering Count I of the Complaint, defendant states that plaintiffs, and each of them, have breached and are continuing to breach, the provisions of Exhibit A to the Complaint and each of them has breached and continues to breach the provisions of Exhibits B and C respectively to the Complaint; that such breaches have damaged and will continue to damage defendant in an amount in excess of the final installment allegedly due plaintiffs referred to in paragraph 9 of the Complaint; and that defendant therefore has a valid and enforceable set-off against said final installment.

"9. Further answering Count I of the Complaint, defendant states that plaintiffs, and each of them, have by their actions and conduct waived and forfeited any right thay may have had to receive any of the payments alleged in Count I to be due them."

Plaintiffs state:

"None of the material in paragraphs 6, 7, 8 and 9 are (sic) set forth with enough particularity to determine if there are in fact good and valid affirmative defenses available to defendant herein or if there is any basis for a set-off against amounts defendant owes plaintiffs. Federal Civil Rule 8(c) contemplates defendant will set

forth with some particularity upon which it relies on a claim of an affirmative defense or any other matter constituting an avoidance. The defendant has merely plead in paragraphs 6, 7 and 8 of their Answer to Count I of the Complaint that 'plaintiffs, and each of them, have breached and are continuing to breach the provisions' of the Agreement of Sale (Exhibit A) and the employment contracts (Exhibits B and C) attached to the Complaint without, in any detail or respect whatsoever, stating the particular manner or nature of such breaches. Furthermore, defendant in paragraph 9 of its Answer to Count I of the Complaint states merely that 'plaintiffs, and each of them, have by their actions and conduct waived and forfeited any right' to payments under said Agreement of Sale without specifying what actions or conduct, if any, constituted a waiver and forfeiture. The various matters raised by said paragraphs 6, 7, 8 and 9 of the Answer are in the nature of affirmative defenses which must set forth facts sufficient to sustain each defense or set-off and acquaint plaintiffs therewith. If there are not facts sufficient in law to support affirmative defenses or a set-off, then the paragraphs under consideration must be stricken in their entirety."

Defendant opposes the motion:

" . . . a timely motion was not filed within the 20 days provided by F.R.Civ.P. 12(f).

"F.R.Civ.P. 8(b) provides that defenses shall be stated in short and plain terms. Official Form 20 illustrates what is contemplated under the Rules. The requirements for the pleading of a defense are no more stringent than those for a complaint. '[A] defense is good unless it appears to a certainty that plaintiffs would succeed despite any state of facts which would be provided in support of the defense.' Lehmann Trading Corp. v. J. & H.

Stolow, Inc., [D.C.] 184 F.Supp. 21. Paragraphs numbered 6–9 of defendant's answer comply with the requirements of notice pleading. See Moriarity v. Curran, 18 F.R.D. 461 (S.D.N.Y.1956).

"Plaintiffs do not claim to have been prejudiced in any way by the statements of the defenses in paragraphs numbered 6–9. The matters stated in these paragraphs will be stated with greater particularity in defendant's narrative statement."

Fact pleading is not required in federal court. See Wright, Law of Federal Courts § 68, pp. 286–287. The motion to strike will therefore be denied.

The acts and omissions of defendant and its counsel which have been detailed in the order of September 10, 1970, and in this order, clearly show a callous indifference to the Federal Rules of Civil Procedure regulating discovery and to the pretrial orders of this Court. Under the applicable principles of current Rule 37, F.R.Civ.P., as clearly noted above, it is not necessary to find that the defaults of defendant were intentional in order to justify the imposition of sanctions. Even assuming, therefore, without holding, that, prior to the amendments of the Federal discovery rules, effective July 1, 1970, deliberate, intentional failure to make discovery had to be shown to warrant sanctions, it must be granted that the conduct in this case which came after July 1, 1970, warrants sanctions. Further, there was unquestionably intentional obstruction of discovery in what the order of September 10, 1970, characterized as "deliberate misconstruction" of plaintiff's interrogatories 30 and 31. As noted above, the present finding of the Court is that the meaning of interrogatory 31 made clear the meaning of interrogatory 30 and that the misconstruction of the former interrogatory was therefore unreasonable and deliberate. Even granting all that defendant states respecting interrogatory 30, the conclusion which must be

reached is that the interrogatory was ambiguous and defendant chose the construction which would frustrate discovery. Therefore, the ambiquity can serve as no excuse for obstruction of discovery in this regard and the default must be regarded as intentional.

Another observation is in order on the discovery finally made by defendant in September and October of 1970. The discovery was untimely and it would not have been secured except for the efforts of the plaintiff and the actions of the court at the pretrial conference held herein and the order of September 10, 1970, compelling discovery.

For the foregoing reasons, it is

Ordered that sanctions be, and they are hereby, imposed on defendant for its wilful failure to make discovery and that defendant pay to plaintiffs the sum of $2400 plus 6% per annum interest from the below date until paid. It is further

Ordered that plaintiffs' motion to strike be, and it is hereby, denied.