**NATIONAL POLYMER PRODUCTS, INC., Plaintiff-Appellant,**

v.

**BORG–WARNER CORPORATION, Defendant-Appellee.**

No. 78–1543.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 21, 1980.

Decided Feb. 11, 1981.

James H. Mathis, Gerber, Bernstein, Gerber & Winestone, Hal Gerber, Memphis, Tenn., for plaintiff-appellant.

Newton P. Allen, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Jon P. McCalla, S. Russell Headrick, Memphis, Tenn., for defendant-appellee.

Before MARTIN, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and DUNCAN, District Judge.*

DUNCAN, District Judge.

The question before us arises tangentially out of a diversity action filed by plaintiff-appellant National Polymer Products, Inc. against defendant-appellee Borg-Warner Corporation for damages arising out of the

sale of a product supplied by Borg-Warner to National Polymer. The case was tried to a jury, resulting in a verdict for the plaintiff. The trial court later set aside the verdict and ordered a retrial. The merits of the plaintiff's case and the Court's new trial ruling are not at issue on this appeal. We are concerned here with the district Court's enforcement after trial of a protective order issued before trial.

On May 28, 1976, the district court entered, with the consent and approval of counsel for plaintiffs National Polymer Products, John C. Prince and Richard H. Rodenbaugh,[1] the following protective order:

> That all information, including test information and quality control reports and test results, produced by Borg-Warner Corporation or any of its employees or officers shall not be disclosed to National Polymer Products personnel, except insofar as it may be necessary for consultation with counsel for National Polymer Products or counsel for Richard H. Rodenbaugh or counsel for John C. Prince in order to prepare for and assist in the prosecution of National Polymer Product's action against Borg-Warner Corporation, and any such person obtaining access to the information for this purpose shall not reveal it to or use it for any purpose other than for preparation and trial of this action, and no such information shall be disclosed to the public or to any competitor of Borg-Warner Corporation, or to any customer or prospective customer of Borg-Warner Corporation or to any governmental agency . . . .

Subsequently, the case was tried in open court. Testimony was heard concerning Borg-Warner's test information, quality control reports and test results from witnesses for both parties. At no time did Borg-Warner move for *in camera* proceedings or request any other restriction on the

---

* Robert M. Duncan, United States District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. Richard H. Rodenbaugh and John C. Prince were originally plaintiffs in the case and were apparently parties when the May 1976 protective order was filed. Both individuals' claims were dismissed, however, prior to trial.

exposure of others to the evidence in the case. No reassertion or even mention of the protective orders was made at the trial. The trial was attended throughout by the general public and, on occasion, by members of the press.

After trial, Richard H. Rodenbaugh, vice president of plaintiff corporation, sent a letter to persons in the plastics industry, including competitors of Borg-Warner Corporation, announcing a forthcoming seminar to be conducted by an entity called the National Polymer Institute relating to some of the issues involved in the litigation between the parties.

The letter referred to the verdict awarded plaintiff-appellant National Polymer Products, Inc. in the litigation and recited five assertions alleged to have been made by Borg-Warner during the trial regarding quality control and test results. The letter further promised to bring suppliers and their customers together for five seminars dealing with various aspects of manufacturer's quality control.

A review of the record reveals that National Polymer Products, Inc., the only remaining party to this lawsuit, was apparently not directly involved in writing the letter or planning the seminars but that the project was the creation of its vice president, Mr. Rodenbaugh. It is not clear whether Mr. Rodenbaugh was acting on behalf of the plaintiff corporation or in the course of his duties as an officer of the corporation. Mr. Rodenbaugh testified that shortly after the trial, it occurred to him that others in the industry would benefit from knowledge of what transpired at trial, so he set up the "National Polymer Institute" as a sole proprietorship to conduct seminars with suppliers and customers working jointly to educate members of the industry about warranties, industry standards and other matters. Defendant Borg-Warner was among the recipients of Mr. Rodenbaugh's letter. Believing the letter to be a violation of the protective order entered prior to trial and the proposed seminars to pose a threat of further violation, Borg-Warner filed a motion in this action to hold National Polymer Products, Inc. and Mr. Rodenbaugh in contempt for failure to comply with the court's protective order. After a hearing, the court refused to hold plaintiff or Mr. Rodenbaugh in contempt but did hold "that the release of information gained in discovery within the scope of the protective orders previously referred to would constitute a violation of such orders, despite the fact that some of this information was revealed in testimony in open court during the trial of this cause." Finding that the letter constituted such a violation, the Court entered a permanent injunction against any further disclosure, whether by seminar or otherwise, of information subject to the protective order.

Plaintiff-appellant appeals from this permanent injunction. The plaintiff-appellant does not challenge the validity of the protective order as originally issued. Nor does it challenge the finding of the district court that the protective order remains in force and effect. Rather, what National Polymer Products, Inc. contends is that information contained in the letter and information which would have been revealed at the seminars was made public at the trial with no objection by Borg-Warner, thereby entering the public domain and escaping the reach of the protective order.

National Polymer Products, Inc. argues, and Mr. Rodenbaugh testified, that all the information in the letter and to be produced in the seminars was information that was made public at trial. Borg-Warner does not dispute this contention. The district court made no findings on this issue. For the purposes of this appeal, we therefore assume, as the trial court apparently did, that all of the information Mr. Rodenbaugh seeks to disclose is readily ascertainable from a perusal of the transcript of the trial.

■ With that premise in mind, we begin with the well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use. A line of Supreme Court cases empha-

sizes the importance of public trials to our system of justice and recognizes the right to publish information made a part of the record in a judicial proceeding. In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) the Supreme Court held that a State may not impose sanctions on the accurate publication of the name of a rape victim obtained from judicial records maintained in connection with a public prosecution and which are themselves open to public inspection. In so holding, the Court reaffirmed the principles laid down a quarter century earlier in *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947), and quoted that case as follows:

> A trial is a public event. What transpires in a courtroom is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt.... Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

The principle that the press could not be prohibited from "truthfully publishing information released to the public in official court records," was reaffirmed in *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), in which the Court held unconstitutional an order prohibiting the press from publishing information adduced as evidence in a public hearing. The order had been entered in the county court prior to trial. Thereafter the county court held a preliminary hearing open to the public and the press, at which evidence was introduced concerning statements and a confession made by the defendant. After the public hearing the state district court modified the order limiting it and making it more specific. Yet the order still covered evidence adduced at the public hearing. The Supreme Court stated:

> To the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles: '[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom.' *Sheppard v. Maxwell*, 384 U.S. [333], at 362–363, 1522. See also *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328.

427 U.S. at 568, 96 S.Ct. at 2807.

In *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355, the Supreme Court stated in a per curiam decision that it was compelled by its decisions in *Nebraska Press Assn. v. Stuart* and *Cox Broadcasting v. Cohn* to hold that the First and Fourteenth Amendments would not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public. 430 U.S. at 310, 97 S.Ct. at 1046. In that case, the information at issue was the name and photograph of a minor charged with delinquency in a juvenile proceeding. The Court stated:

> The court below found the rationale of these decisions to be inapplicable here because a state statute provided for closed juvenile hearings unless specifically opened to the public by court order and because "there is no indication that the judge distinctly and expressly ordered the hearing to be public." We think *Cox* and *Nebraska Press* are controlling nonetheless. Whether or not the trial judge expressly made such an order, members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he left the courthouse. There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval. The name and picture of the juvenile here were "publicly revealed in connection with the prosecution of the crime," 420 U.S., at 471, 95 S.Ct., at 1034, much as the name of the rape victim in *Cox Broadcasting*

was placed in the public domain. Under these circumstances, the District Court's order abridges the freedom of the press in violation of the First and Fourteenth Amendments.

These cases establish the right of the public and the press freely to publish information made public in open trial. The question before this Court is whether, notwithstanding that the public generally enjoys this right, Mr. Rodenbaugh and the plaintiff may nonetheless be prohibited from exercising the same right.

■ It may be argued that litigants and their counsel stand in different shoes than other persons with respect to their rights to reveal information about pending cases. We believe, however, at least in the ordinary case, that the mere status of involvement in a lawsuit, without more, is insufficient to justify the restriction imposed here.

■ This Court has previously recognized that the power of a district judge to restrict parties and participants in litigation from disclosing information about that litigation is bounded by First Amendment limitations. *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975). In the *CBS* case, the district judge entered an order without objection by counsel, with the intended purpose of inhibiting the possibility of the effect of inflammatory publicity on prospective jurors in a case of great public interest. The order broadly prohibited all parties, and in addition, "their relatives, close friends and associates," from discussing the cases with members of the public or news media. This court, granting a writ of mandamus directing the judge to vacate the order, stated:

Every trial judge is charged with the primary responsibility of insuring that the judicial proceedings over which he presides are carried out with decorum and dispatch and thus has very broad discretion in ordering the day-to-day activities of his court.... Yet, as the authorities demonstrate, any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of

First Amendment rights will interfere with the rights of the parties to a fair trial.

*Id.* at 241. *Accord, In re Oliver*, 452 F.2d 111 (7th Cir. 1971); *Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970).

■ The principle that parties do not lose their First Amendment rights by virtue of their participation in legal processes extends to information obtained in discovery as well as that obtained from the public record. The discovery rules themselves place no limits on what a party may do with materials obtained in discovery.

Generally speaking, when a party obtains documents or information through the discovery process, he can "use that information in any way which law permits." ... The implication is clear that without a protective order materials obtained in discovery may be used by a party for any purpose, including dissemination to the public.

*In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), quoting *Leonia Amusement Corp. v. Loew's, Inc.*, 18 F.R.D. 503, 508 (S.D.N.Y. 1955). *See In re Upjohn Co. Antibiotic Cleocin Products*, 81 F.R.D. 482, 486 (E.D. Mich.1979).

Certainly a party may, by consenting to a protective order or otherwise, waive such rights. Thus our inquiry focuses on the protective order entered into in this case. An argument can be made for the proposition that Mr. Rodenbaugh relinquished any right to publish the information in his letter in exchange for receiving access to discovery. His counsel approved the protective order as to form and it was therefore arguably entered with Mr. Rodenbaugh's consent. The question is raised then whether, by agreeing to the entry of the protective order, Mr. Rodenbaugh waived his right to disclose discovery information later revealed at trial.

■ A waiver of First Amendment rights may only be made by a "clear and compelling" relinquishment of them. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145, 87 S.Ct. 1975, 1986, 18 L.Ed.2d 1094 (1967);

*Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). While the order was approved by counsel for both sides in the litigation, and may waive certain rights, it is not unambiguous. Mr. Rodenbaugh disputes that the order was intended to extend to information disclosed at trial. The trial court apparently credited Mr. Rodenbaugh's contention that he acted in good faith belief that the order was not so drawn, since it refused to adjudge him in contempt for that reason.

■ In addition, Mr. Rodenbaugh's reading of the order is not unreasonable. An important purpose of a pre-trial protective order is to preserve the confidentiality of materials which are revealed in discovery but not made public by trial. As was recognized by the district court for the Southern District of New York in *Reliance Insurance Co. v. Barron's,* 428 F.Supp. 200, 202 (S.D.N.Y.1977):

> [A party's] desire for secrecy will never, of course, be completely satisfied. The trial of this case will be public, although only relevant evidence will be admissible. The difficulty lies in the nature of pretrial discovery which requires the disclosure of material which may be neither relevant nor admissible at trial, since it may lead to the discovery of relevant evidence. See Rule 26(b), F.R.Civ.P.

■ As for preserving the secrecy of documents which are relevant to the litigation, the protective order could have been drawn expressly to require the submission of confidential matter to the trier of fact under seal. *Downs v. United States,* 382 F.Supp. 713, 758 (D.Tenn.1974), *reversed on other grounds,* 522 F.2d 990 (6th Cir. 1975). *Cf. E. I. DuPont de Nemours Powder Co. v. Masland,* 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917). Absent findings that the parties clearly intended the protective order to extend further than is contended by Mr. Rodenbaugh, we believe that his waiver must be narrowly construed to effectuate the policies of the First Amendment. Regardless of the validity of the protective order when originally entered, its subsequent enforcement by injunction against a party disputing its scope is a prior restraint which cannot be upheld without supporting findings. Fed.R.Civ.P. 65(d).

■ Whether the injunctive order entered below after trial can be upheld cannot be determined at this stage of the proceedings. A two-step determination is necessary. First, the trial court should examine, *in camera,* if necessary, the materials produced by virtue of the protective order, the transcript at trial, and the matters revealed or intended to be revealed by Mr. Rodenbaugh. Matter subject to the protective order and permanent injunction not publicly disclosed at trial may not be divulged. As for matter that has been publicly revealed, the court must proceed to the second step, which involves a balancing process. Such matter may not be restrained unless the court finds that the interests in preserving the confidentiality of the material outweigh Mr. Rodenbaugh's interest in disseminating it and the legitimate interest others may have in receiving it. In undertaking this balancing process, the court must bear in mind that prior restraints bear a heavy presumption against their constitutional validity. *New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Considerations that may weigh against that presumption are whether disclosure might jeopardize the defendant's right to the fair administration of justice, *CBS, Inc. v. Young, supra,* whether disclosure will actually impair legitimate business interests of the defendants, *Rodgers v. United States Steel Corp.,* 536 F.2d 1001 (3d Cir. 1976); *Natta v. Zletz,* 405 F.2d 99 (7th Cir. 1968), and whether the purpose of disclosure would clearly constitute an abuse of the discovery process.

In this connection, the Court finds helpful the discussion of Judge Bazelon in *In re Halkin* :

> Initially, the trial court must determine whether a particular protective order in fact restrains expression and the nature of that restraint. First Amendment interests will vary according to the type of expression subject to the order. An order

restraining publication of official court records open to the public, or an order restraining political speech, implicates different interests than an order restraining commercial information. The interests will also vary according to the timeliness of the expression. An order restraining highly newsworthy information raises a different issue than a temporary restraint of materials having "constant but rarely topical interest."

The court must then evaluate such a restriction on three criteria: the harm imposed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression.

*See also Reliance Insurance Co. v. Barron's, supra,* 428 F.Supp. at 202–203. No such findings were made in the court below. Accordingly, the case is remanded for further proceedings consistent with this opinion.