863 F.2d 48
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JACKSON/CHARVEL, INC., and Rhythm Bank, Inc., Plaintiffs-Appellants,
v.
GIBSON GUITAR CORPORATION and Henry Juszkiewicz, Defendants-Appellees.
 No. 88-5177.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1988.
 
 Before KEITH, RALPH B. GUY, Jr., and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants, Jackson/Charvel, Inc., and Rhythm Band, Inc. ("Jackson/Charvel, Inc."), appeal from the order of the district court denying their motion for contempt of the permanent injunction entered pursuant to an agreed judgment entered on their complaint alleging trademark infringement and unfair competition. For the following reasons, we reverse and remand.
 
 I.
 
 2
 Wayne Charvel is a designer of guitars who founded Charvel's Manufacturing, a business involved in the manufacture, sale and repair of musical instruments. In 1978, Wayne Charvel sold his interest in Charvel's Manufacturing to Olin H. Jackson, Jr. Charvel's Manufacturing is a predecessor company of Jackson/Charvel, Inc. Among the assets which were listed in the sale contract were "[t]he business name, 'Charvel's Manufacturing,' and all of the trade, goodwill, and other intangible assets connected with the manufacturing business and the distribution of its products."
 
 
 3
 In 1986, Wayne Charvel signed a contract with appellee Gibson Guitar Corporation ("Gibson") to design guitars for Gibson.[1] Gibson began marketing these guitars using the "Charvel" name. Jackson/Charvel, Inc. responded by filing a complaint in the district court alleging that the use of the name "Charvel" by Gibson constituted trademark infringement and unfair competition. The complaint requested that a preliminary and permanent injunction issue enjoining appellees "from using in any manner whatsoever the trademark 'Charvel' or any colourable imitation or infringement of the trademark 'Charvel' and from engaging in unfair competition with plaintiffs." Following the filing of an answer and amended counterclaim, appellants filed a motion for a temporary restraining order. At the hearing on that motion, the district court, before issuing the TRO, noted its belief that the use of the name "Charvel" by Gibson was an obvious effort to appropriate the goodwill associated with the "Charvel" name; however, the district court also expressed its concern with depriving Wayne Charvel of the commercial use of his own name, and suggested to the parties that they attempt to come up with "some structured way that can prevent confusion in the market place, [and also providing that] Mr. Charvel will be allowed to sell his name."
 
 
 4
 Pursuant to this suggestion, the parties negotiated the Agreed Judgment which is at issue here.[2] The Agreed Judgment provides, in relevant part, that:
 
 
 5
 1. Defendants GIBSON GUITAR CORP. ("GIBSON"), HENRY JUSZKIEWICZ ("JUSZKIEWICZ") and WAYNE CHARVEL ("WC"), their agents, servants, employees, attorneys, representatives and assigns, and all those acting in concert with them are hereby permanently enjoined from using in any matter whatsoever the trademark or name "CHARVEL" or "WAYNE CHARVEL" in connection with the advertisement, promotion, or sale of guitars and basses; provided however, that GIBSON and WC shall be entitled to use the terms "WC" or "W.C." on guitars and basses, and provided further that GIBSON and WC shall be entitled to use the words "Wayne Charvel" for the limited purposes and to the extent and in the manner set forth in paragraph 2 below. JACKSON/CHARVEL and RBI agree that they will consider such additional initials as may be proposed in writing by GIBSON to be used by GIBSON on the same terms and conditions as "WC" and "W.C."....
 
 
 6
 2. The contributions of Wayne Charvel as a designer, innovator or consultant may be acknowledged by GIBSON in materials prepared by GIBSON or at its direction for use in printed materials or the print media or the electronic media, provided that he is always referred to as Wayne Charvel and never as Mr. Charvel or Charvel ...
 
 
 7
 3. The disclaimer mentioned in paragraph 2 above shall read: "Wayne Charvel is not now and has never been associated with JACKSON/CHARVEL, INC., or the registered trademark "CHARVEL."
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 The district court entered the Agreed Judgment on August 20, 1987.
 
 
 11
 In November 1987, appellees distributed an advertising brochure to its authorized dealers and salesmen concerning its W.R.C. guitar designed by Wayne Charvel.[3] The brochure is a single sheet of glossy paper with a fold in the middle. On one side appears what purports to be an official court document, but what is actually a composite of the original summons in this action and selected portions of the cover of defendant's brief in opposition to plaintiff's motion for TRO and preliminary injunction. The words "Wayne Charvel" appear in the caption, as well as "Jackson/Charvel, Inc." Superimposed over the "document" in red letters enclosed in a red border are the words "CASE CLOSED"; below these words, also in red, appears "DON'T DELAY-ORDER TODAY!"
 
 
 12
 The reverse of the brochure is divided into two halves. On one side there is text which reads, in relevant part:
 
 
 13
 The court cases are over, the lawyers have called it a day and it's time to set the record straight. In the early 70's Wayne Charvel founded a business known as Charvel's Manufacturing which he sold in 1978 to his business associate, Grover Jackson. Charvel's Manufacturing was the predecessor of the company now known as Jackson/Charvel, Inc. Gibson Guitar Corporation has contracted with Wayne Charvel to design American made guitars for you, the player. Wayne Charvel's first guitar with Gibson is called the W.R.C., which stands for Wayne Richard Charvel....
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 Below the text and a technical description of the W.R.C. guitar is the disclaimer provided for in paragraph three of the Agreed Judgment. The disclaimer is required by the other side of the reverse, which consists of a picture of the guitar and the following design credit:
 
 W.R.C. Guitar
 
 17
 designed by
 
 Wayne Charvel
 Ferrari Red
 
 18
 Upon learning of the dissemination of the brochure, appellants moved for an order holding appellees in contempt of the permanent injunction contained in the Agreed Judgment. After a hearing, the district court issued an order on January 15, 1988, denying plaintiff's motion. In that order, the district court noted that "[b]oth parties agree that the primary purpose of the injunction is to prevent defendants from confusing the public and wrongfully appropriating or trading off of the goodwill and reputation associated with Jackson/Charvel, Inc., and the Charvel trademark." The order goes on to state that:
 
 
 19
 Plaintiffs' arguments [that the brochure is a violation of the Agreed Judgment] are based upon an overbroad interpretation of the terms of the injunction. The Court is unconvinced that the advertising brochure violated, in any manner, either the terms, or most importantly, the spirit of the injunction. Plaintiffs' motion, therefore, is denied.
 
 II.
 
 20
 "The scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 574 (1984), quoting United States v. Armour & Co., 402 U.S. 673, 682 (1971). In Armor, the Supreme Court explained the reasons justifying this basic principle of interpretation:
 
 
 21
 Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes, generally opposed to each other, as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has been given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.
 
 
 22
 402 U.S. at 681-82 (emphasis in original). Thus, if the language of the decree is unambiguous, a court's interpretation of the decree may not depart from its four corners. See, Dotson v. U.S. Department of Housing and Urban Development, 713 F.2d 313, 318 (6th Cir.1984).[4]
 
 
 23
 Based on these considerations, we conclude that the district court erred in taking the "spirit" of the Agreed Judgment into consideration when it denied appellant's motion for contempt. The district court made no finding that the consent decree was ambiguous; therefore, there was no justification for looking beyond its express language in determining whether it had been violated.
 
 
 24
 Moreover, the district court could not have made such a finding, for the terms of the Agreed Judgment are abundantly clear. By its unambiguous language, appellees are forbidden to use the name "Charvel" or "Wayne Charvel" in connection with the advertisement, promotion, or sale of guitars and basses, except when acknowledging the contributions of Wayne Charvel as a designer, innovator or consultant--and then only if he is referred to as Wayne Charvel, and only if accompanied by a specific disclaimer. Appellee's brochure with references to "Jackson/Charvel, Inc.," "Charvel" and "Wayne Charvel" (outside of the design credit) is a clear violation of the Agreed Judgment.
 
 III.
 
 25
 Accordingly, for the foregoing reasons, we reverse the judgment of the district court, and remand for a determination of damages and other appropriate remedies.[5]
 
 
 26
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 27
 It is with reluctance that I write this brief dissent because I believe the majority may have reached an "equitable" result. However, viewed from a strictly legal standpoint, I do not believe defendants have violated the consent decree, and I would affirm the trial judge.
 
 
 28
 The real problem in this case stems from the fact that the mark plaintiffs seek to protect also happens to be the name of a living individual. Wayne Charvel is not only alive but also still active in the entertainment and guitar design business. The plaintiffs, of course, realize this and that is more than likely why this case was disposed of in the first instance by a consent decree that affords very little protection to the plaintiffs.
 
 
 29
 In the typical trademark case, the plaintiff is interested in keeping the defendant from unfairly trading on plaintiff's good name as represented by its mark. What occurred here, however, is that the defendant, rather than trying to confuse the public or make them believe that its guitar was made by Jackson/Charvel, did just the opposite. It tried to distance itself from Jackson/Charvel. The thrust of Gibson's advertising brochure was to tell the world that, as a result of litigation, Jackson/Charvel had the "name" but Gibson had Wayne Charvel. Although in some quarters this may be viewed as dirty pool, it was not, in my opinion, a violation of the consent decree. To that end, I disagree with the trial judge's conclusion that Gibson's advertisement did not violate the "spirit" of the injunction. Jackson/Charvel had attempted to achieve a "you go your way and we will go ours" kind of balance but did not accomplish this in the wording chosen for the consent decree. They were simply outflanked and I suspect that egos more than dollars are at stake here. If any sales were won or lost it is likely that it was not the result of confusion but, rather, the fickle buyer's preference for what was made out to be (accurately so) the latest Wayne Charvel product.
 
 
 30
 I would affirm but with a caution to defendants that even consent decrees can be modified.
 
 
 
 [1]
 Appellee Henry Juszkiewicz is the president of Gibson
 
 
 [2]
 By agreement between the parties, the TRO was extended four times, eventually to be superseded by the Agreed Judgment
 
 
 [3]
 The parties had agreed to expand the list of permissible initials to include "W.R.C."
 
 
 [4]
 Appellee argues that United States v. ITT Continental Baking Co., 420 U.S. 223 (1975), supports its view that the district court properly considered the "spirit" of the Agreed Judgment, and quotes the following language from that case:
 Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree. Such reliance does not in any way depart from the "four corners" rule of ARMOUR.
 420 U.S. at 238. However, the "aids to construction" referred to in ITT Continental Baking were (a) an appendix setting forth the background leading to the complaint and proposed order which was incorporated by reference in the decree; and (b) the complaint itself, which the agreement itself provided could be used in construing the terms in the order. 420 U.S. at 238. Since ITT Continental Baking, the Supreme Court and this court have reiterated the Armour rule. E.g., Stotts, 467 U.S. at 574; Dotson, 731 F.2d at 318.
 
 
 [5]
 Appellees also argue that the first amendment prohibits an interpretation of the Agreed Judgment that would prohibit truthful, non-deceptive speech. This argument is without merit. Whatever the level of constitutional protection to which appellee's use of a trade name is entitled, it is clear that appellees waived any first amendment claim for the consideration of avoiding litigation in agreeing to the unambiguous decree. See, National Polymer Products, Inc. v. Borg-Warner Corp., 641 F.2d 418, 423 (6th Cir.1981) (waiver of first amendment rights in consenting to a protective order valid if "clear and compelling relinquishment," waiver invalid due to ambiguity in the order)