89 F.3d 833
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John DOE; Jane Doe, Plaintiffs-Appellants,
v.
George LOCKWOOD; City of Niles; Richard Dixon; Richard
Wilson; Chris Mannella; Bruce Bennett; Warren
City Board of Health, Defendants-Appellees.
 No. 95-3499.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1996.
 
 Before: MARTIN and SILER, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Arguing that the defendants violated their substantive due process right to the privacy of information concerning John Doe's status as an HIV-infected person by disclosing to the public that John Doe was infected, John Doe and Jane Doe appeal the district court's dismissal of their 42 U.S.C. § 1983 causes of action for failure to state a claim, as well as its dismissal without prejudice of their supplemental state law claims. Because we agree with the district court that the Does[1] have failed to show that John Doe enjoyed a constitutional right to informational privacy in his HIV-positive status under the law as it currently stands, we AFFIRM.
 
 
 2
 Based on the Does' first amended complaint[2] and the exhibits of record, the magistrate summarized the facts as follows:
 
 
 3
 Plaintiffs John and Jane Doe describe themselves as having been involved in a "committed relationship" with one another and as having made plans to be married.
 
 
 4
 In August of 1993, while they were living together at a residence in the Niles/Warren area, they were visited by Mr. Ray Singletary, an HIV test counselor for the Ohio Department of Health, at which time he informed the couple that they had been identified as having been exposed to the HIV virus. At the request of Mr. Singletary, the couple underwent testing to determine whether they had been infected with the HIV virus. They tested positive.
 
 
 5
 During post-test counseling with Mr. Singletary the couple provided him with names of other sexual partners, so that they could also be informed of their exposure to the virus. Mr. Singletary continued to remain in contact with the couple.
 
 
 6
 Subsequent thereto, Mr. Singletary discussed with Mr. George Lockwood, Deputy Health Commissioner for the City of Warren, the HIV/AIDS status of John and Jane Doe. He also described to Mr. Lockwood an alleged threat by John Doe that he intended to "infect unknowing female sexual partners."
 
 
 7
 In September of 1993 John Doe, who had been convicted of receiving stolen property, was incarcerated serving a six-month sentence, during which time he was granted permission to visit (with accompanying police escort, Officer Durst of the Niles Police Department) his private physician for a second HIV test to confirm the prior positive test results. While in the presence of the police escort John Doe's private physician confirmed the prior results and diagnosed him as having AIDS.
 
 
 8
 During John Doe's incarceration Mr. Bruce Bennett, municipal prosecutor for the City of Niles, showed a female visitor a file containing John Doe's HIV test results.
 
 
 9
 John Doe continued to suffer health problems and, as a consequence, he requested from the sentencing court in Niles ... medical leave in order to receive treatment. As a condition to securing such leave he was required by the judge to admit his HIV status in open court.
 
 
 10
 In early December of 1993 articles began to appear in local newspapers ... which described the frustration of Mr. Lockwood with a person who had been diagnosed as having AIDS and who had allegedly threatened to knowingly infect as many others as possible, but whose identity had to be kept confidential by law. [footnote omitted]. In one article, Mr. Lockwood is quoted as saying that he would "like to put [the man's name] on a billboard]," and that he was "checking with the state to see if it's possible to breach confidentiality." In another article, Mr. Lockwood is quoted as follows: "I'm trying to do whatever I can, short of losing my job. I'd like to get his name in the paper and on a billboard. Confidentiality can only protect someone so far."
 
 
 11
 In yet another article, Mr. Lockwood stated that two women had contacted him to inform him that they had engaged in sex with John Doe, and that he had encouraged them to testify against John Doe if their HIV results were positive, even though it was "unclear" whether John Doe knew he was HIV-positive when they had sex with him.
 
 
 12
 The newspaper articles repeatedly refer to the fact that Mr. Lockwood had contact with the Trumbull County Prosecutor's Office (which has jurisdiction over Niles and Warren) in an attempt to convince that office to investigate and criminally charge John Doe in connection with alleged attempts to knowingly infect others with the HIV virus. In fact, in one article Mr. Thomas Gysegem, Assistant Trumbull County Prosecutor, was quoted as stating that his office would work with the law departments of the Cities of Niles and Warren, as well as the Warren Health Department, to accomplish that goal. Detective Richard Dixon of the Niles Police Department was repeatedly quoted in newspaper articles as stating that the allegations of intent to knowingly infect others were "rumors," but that if they were true then John Doe could be criminally liable. No charges were ever filed in that regard.
 
 
 13
 Newspaper articles up to this point had revealed many details bearing upon John Doe's identity, including his age, area of residence, description of family members, personal relationships and social habits, without naming him.
 
 
 14
 On December 7, 1993, Officers Richard Wilson and Chris Mannella of the Niles Police Department were dispatched to the scene of a domestic dispute between a man and a woman, neither of whom were related to, or in the presence of, the plaintiffs. Consequent thereto, the officers completed a police report in which the following appeared:
 
 
 15
 ACTION TAKEN Spoke with a Spencer Moss who was upset because his girlfriend, Pam O'Brien, had past sexual relationships with the subject, [included here was John Doe's real name], the subject of the current aids controversary (sic).
 
 
 16
 On the following day, December 8, 1993, the plaintiff was identified in an article appearing in the Tribune Chronicle bearing the headline "AIDS carrier identified; Niles man refuses comment." In fact the first words in the article were John Doe's first and last names, and his name appeared numerous times throughout the article.
 
 
 17
 Four days later, on December 12th, an editorial bearing the headline "Lockwood manipulated area media" appeared in the Tribune Chronicle. The editorial referred to Mr. Lockwood's attempts to have John Doe publicly identified and, theretofore, to "circumvent a law designed to protect the privacy of people with AIDS", by "pander[ing] to and incit[ing] public fear." The author also wrote:
 
 
 18
 In the meantime, officials were making it easy for us to find out the man's identity. Purposely dropped clues led us to jail records and other evidence. A police officer even mentioned the man's name in a police report on a completely separate incident.
 
 
 19
 The plaintiffs allege that the public identification of John Doe as being involved in what was referred to locally as the "AIDS controversy," caused their lives to be drastically altered in the following ways: (1) Jane Doe's former husband has won custody of her children after "an ex parte [emergency custody] proceeding where Jane Doe had no opportunity to respond to the charges," which charges included the fact that John Doe had been diagnosed as having AIDS; (2) John Doe attempted suicide; (3) both plaintiffs have "become anxious, despondent, depressed, and frightened;" (4) John Doe has received death threats; (5) both plaintiffs have been subjected to "public scorn" and, as a consequence, they "feel unsafe and fearful when attempting to visit family in the Niles-Warren area;" (6) in an attempt to escape their environment, the plaintiffs have moved away from their "home, friends and family;" and, (7) the plaintiffs' already poor health has been negatively affected by the ostracism.
 
 
 20
 * * *
 
 
 21
 On March 18, 1994, the Does filed this Section 1983 action in federal court, claiming that John Doe's procedural due process rights[3] and substantive due process right to informational privacy had been violated by persons acting under color of state law. The Does also asserted several supplemental state law claims. Motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) were filed at various times by the defendants. These motions were referred to the magistrate. On October 27, 1994, the magistrate recommended that the defendants' various motions for dismissal be denied, reasoning that the Does had alleged a violation of John Doe's asserted constitutional right to informational privacy.
 
 
 22
 The magistrate primarily relied on a decision from the Northern District of Ohio, Doe v. City of Cleveland in recommending that the defendants' motions to dismiss be denied. The district court in City of Cleveland discussed this Court's precedents regarding a claim to a constitutional right to informational privacy, and concluded that:
 
 
 23
 While not all information would be protected by the constitution from disclosure, this Court believes that information relating to AIDS--like information relating to psychiatric treatment--is of a fundamental enough nature to be protected. Thus, this Court finds that Doe had a privacy interest in nondisclosure of this private information. Clearly, there was no legitimate governmental interest to be served by disclosure of the information to [a third party].
 
 
 24
 788 F.Supp. 979, 985 (N.D.Ohio 1991) (discussing J.P. v. DeSanti, 653 F.2d 1080 (6th Cir.1981); In re Zuniga, 714 F.2d 632 (6th Cir.), cert. denied, 464 U.S. 983 (1983); and, Gutierrez v. Lynch, 826 F.2d 1534 (6th Cir.1987)). The magistrate also reasoned that this Court's decision in Doe v. Wigginton, 21 F.3d 733 (6th Cir.1994)--holding that a prison inmate did not have a constitutional right to informational privacy of his HIV-positive status where a corrections officer opened his confidential medical file during his initial processing at a Kentucky penal institution and discovered the information--did not foreclose a holding that John Doe's informational right to privacy was violated. The magistrate believed that neither Wigginton, nor J.P. v. DeSanti upon which it relied, were on point because in those cases the state actors did not "indiscriminate[ly] disclos[e] [the claimed private information] to private parties who had no legitimate basis for receiving the information." J.A. at 85 (magistrate's opinion).
 
 
 25
 On January 27, 1995, the district court issued an opinion rejecting the magistrate's reading of Circuit precedent and concluded John Doe did not have a constitutional right to informational privacy in his HIV-positive status under DeSanti or Wigginton.[4] The district court entered judgment for the defendants on April 4, 1995. This timely appeal followed.
 
 
 26
 Because the district court decided that the defendants had failed to state a claim upon which relief could be granted, we will review the district court's decision as one addressing the merits of Doe's complaint based on the pleadings pursuant to the defendants' 12(b)(6) motions. We have observed that a "district court's dismissal of a civil rights complaint on a 12(b)(6) motion is scrutinized with special care." Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994) (citations omitted). In reviewing whether the Does have alleged any set of facts upon which relief could be granted, we must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences that might be drawn from the allegations. Id. (citing Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir.1976)). Because a 12(b)(6) motion tests the legal sufficiency of the claims asserted, our review is de novo. Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692, 697 (6th Cir.1996). If the factual allegations in the complaint fail to show that the defendants violated John Doe's right to informational privacy under the Constitution of the United States, then we must affirm the district court's dismissal of their cause of action under 42 U.S.C. § 1983.
 
 
 27
 In order to sustain their claim that John Doe has a federal constitutional right to informational privacy, the Does must allege facts to show that the information regarding John Doe's HIV status was not already in the public realm. Doe v. City of New York, 15 F.3d 264, 268 (2d Cir.1994) (stating that, "there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record").
 
 
 28
 We do not believe that an individual can claim constitutional protection in the privacy of information that he or she has intentionally revealed, without coercion by the state, to the public. More specifically, where an individual reveals private information in a courtroom, the information is no longer either objectively or subjectively "private." National Polymer Prods., Inc. v. Borg-Warner Corp., 641 F.2d 418 (6th Cir.1981). In National Polymer Prods. we observed that it is a
 
 
 29
 well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use. A line of Supreme Court cases emphasizes the importance of public trials to our system of justice and recognizes the right to publish information made a part of the record in a judicial proceeding.
 
 
 30
 Id. at 421. The same reasoning applies to other judicial proceedings held in a courtroom. As we stated further in National Polymer Products, "[w]hat transpires in the courtroom is public property," id. at 422 (quoting Craig v. Harney, 331 U.S. 367, 374 (1947)), and "nothing ... proscribes the press from reporting events that transpire in the courtroom." Id. (quoting Sheppard v. Maxwell, 384 U.S. 333, 362-63 (1966) (other citations omitted); and, see generally Kiraly v. Federal Bureau of Investigation, 728 F.2d 273, 280 (6th Cir.1984) (stating that "[w]hile it is true that [the testifying witness] cannot suppress those facts which have become a matter of public record, she retains her right to privacy as to other personal matters").
 
 
 31
 Under the facts as stated in the complaint, John Doe cannot claim that state actors who disseminate the same information to the public that he disclosed in open court have violated his asserted federal constitutional right to informational privacy. We believe this is true even if the state actors' source of the private information was not the court proceedings because the information is no longer "private" in the sense that the public is unaware of the information.
 
 
 32
 After he was sentenced to serve a term of 180-days for receiving stolen property, Doe desired to obtain medical treatment outside of the penal institution. On September 17, 1993, two days after the court sentenced him, Doe requested medical leave from the court and received a hearing. Doe claims that the court asked him why he wanted treatment and that he was "required" to answer. Doe stated to the court at the hearing that he was HIV positive. Doe's HIV status information appears in a notation in the court's docket sheet. The state court granted his request for treatment. This is the basis for Doe's allegation that he was "forced" by the court to reveal his HIV status.
 
 
 33
 Whether Doe was forced to reveal this information, or whether he volunteered it, depends upon Doe setting forth facts to show that he had no choice but to reveal this information in open court. First, Doe sets forth nothing in his complaint to show that he could not have received medical treatment through the state corrections authority. Doe is not claiming that the only treatment available to him would be treatment he secured for himself outside of the penal institutional. We must infer from the complaint as it stands that State of Ohio did not "force" Doe to request medical leave by giving Doe no other option for receiving medical care. Therefore, nothing in the complaint (or elsewhere in the record), indicates that Doe's request for medical leave was other than a voluntary choice on his part.
 
 
 34
 Second, Doe does not allege facts to show that a hearing was the only method by which he could have secured his leave. Doe might have requested that the court rule on his motion based on an affidavit from him regarding his condition and based on his medical records showing that he is HIV positive, submitting all under seal.
 
 
 35
 Third, even if the district court required a hearing on his request, Doe could have told the court that he considered the requested medical information to be personal and confidential. At this point, the court would have been able to ask Doe to approach the bench and give the court the information, or the court could have held the hearing in camera. Doe does not allege that he notified the court that the information he was about to give the court was of a personal nature.
 
 
 36
 Doe's HIV-related information entered the public domain at the hearing. Failing to allege facts to show that his revelation of this information to the court was other than voluntary on his part, Doe has not made a threshold showing that he was given no other choice by the state than to reveal this information. If this information was not private information, then, as a matter of logic, the defendants could not have breached any federal constitutional right in informational privacy Doe may formerly had in this information by disseminating to the public information that was already public.
 
 
 37
 Because we agree that Doe has failed to state a federal claim upon which relief can be granted, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Jane Doe does not allege that the defendants violated any of her federal constitutional or statutory rights. She claims that John Doe's "privacy right extends not only to an individual [John Doe], but also to those intimately associated with him, such as family members. Therefore, both John Doe and Jane Doe, his fiance [sic], may assert their constitutional rights to privacy under 42 U.S.C. Section 1983." Second Amended Complaint. For purposes of reaching a decision we will assume, without deciding, that Jane Doe has standing to assert a claim for her injuries based on the alleged violation of John Doe's asserted right to informational privacy
 
 
 [2]
 The magistrate issued his Report and Recommendation on October 27, 1994. On February 14, 1995, the Does filed a Second Amended Complaint, deleting defendant Singletary from the 1983 Count brought against individuals. In their Section 1983 Count against municipal defendants, the Does deleted the City of Warren, and inserted the independent Warren City Board of Health as a municipal defendant in the Second Amended Complaint
 
 
 [3]
 The Does are not appealing the district court's ruling that their procedural due process rights were not violated
 
 
 [4]
 Shortly after the district court issued its opinion, this Court decided another case in this line of decisions. See Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir.1995) (holding that disclosure of plaintiff's medical records to a prison inmate (her assailant) did not rise to the level of a breach of a right recognized as "fundamental" under the federal constitution). It is not clear whether this Court's decisions in Wigginton and Wellman can be reconciled with our decisions in General Motors Corp. v. Director of Nat. Institute of Occupational Safety and Health, 636 F.2d 163, 166 (6th Cir.1980), cert. denied, 454 U.S. 877 (1981) (interpreting Whalen v. Roe, 429 U.S. 589 (1977) as recognizing that individuals enjoy a constitutionally protected interest in the confidentiality of their medical records) and In re Zuniga, 714 F.2d 632, 641 (6th Cir.), cert. denied, 464 U.S. 983 (1983) (acknowledging a constitutionally protected privacy interest in the confidentiality of a patient's psychotherapist's files, even if that interest is not absolute. The Court weighed intrusion on the patient's privacy with the grand jury's need for the information in its proceedings)